**In re Application of ASTA MEDICA, S.A., et al., for an Order to Take Discovery of David W. Moriarty, Jr., and for a Subpoena Duces Tecum for use in Foreign Countries in Civil Proceedings there pending.**

**Civ. No. 91–328–P–H.**

United States District Court,
D. Maine.

May 22, 1992.

Michael A. Nelson, Deborah M. Mann, Jensen, Baird, Gardner & Henry, Portland, Me., Zachary Shimer, Chadbourne & Parke, John D. Murnane, Brumbaugh, Graves, Donohue & Raymond, New York City, for petitioner.

James G. Goggin, William C. Knowles, Verrill & Dana, Portland, Me., Joseph A. Tate, Stephen D. Brown, Dechert, Price & Rhoads, Philadelphia, Pa., Thomas F. Munno, Dechert, Price & Rhoads, New York City, for Pfizer, Inc. and David W. Moriarty, Jr.

## MEMORANDUM DECISION

HORNBY, District Judge.

This case involves the interpretation of 28 U.S.C. § 1782(a). That statute provides that a United States district court may, upon the application of any interested person, order a person residing in the district to give testimony or a statement or to produce documents for use in a foreign proceeding. The question here is to what degree this discretionary authority should depend on the applicant's ability to compel such testimony or document production in the foreign jurisdiction and whether a United States District Judge must consider foreign law in making a decision. I find that the statute reflects a congressional judgment in favor of liberal disclosure and does not require an American judge to parse foreign law. I GRANT this application to obtain testimony and documents.

### Factual and Procedural Background

Asta Medica, S.A.; Laboratories Sarget, S.A.; Dagra, BV; and Napp Laboratories, Ltd. (hereafter "Asta Medica") are European pharmaceutical companies that are involved in a long-running patent dispute with Pfizer, Inc. Litigation is underway in France, Belgium, England and the Netherlands. The dispute concerns the patent for a method of processing the antibiotic doxycycline. During the course of the French litigation, Asta Medica became aware of previously unknown information it believes affects the validity of Pfizer's patent claim. Specifically, Asta Medica alleges that Pfizer may have derived the process from an Italian Company, Ankerfarm, S.p.A., in the early 1970's while Pfizer and Ankerfarm were engaged in negotiations over a proposed joint venture. Pfizer representatives allegedly visited the Ankerfarm facility in Milan and met with Ankerfarm employees working on the doxycycline processing technology. Pfizer ultimately chose not to pursue the joint venture, but subsequently obtained its own patents on the process. Asta Medica believes that Pfizer's patents are invalid because the technology in question was already in the public domain by virtue of the earlier nonconfidential disclosures of Ankerfarm.

Asta Medica wishes to obtain documents and testimony from Pfizer employees who were involved in Pfizer's dealings with Ankerfarm. Asta Medica argues that these employees may have information that directly undercuts Pfizer's patent infringement claims, testimony that might be critical in the ongoing European litigation. Asta Medica filed an *ex parte* application in this District for United States judicial assistance under 28 U.S.C. § 1782, seeking testimony of David W. Moriarty, a former Pfizer employee now living in York, Maine. Asta Medica also sought a subpoena *duces tecum*. Magistrate Judge Cohen initially granted the *ex parte* application, but Pfizer and Moriarty (hereinafter "Pfizer"), once notified, moved to quash the subpoena. Pfizer maintained that a private party invoking a court's assistance under § 1782 had to show that the requested information

was discoverable under the law of foreign jurisdiction. Judge Cohen then granted Pfizer's motion to quash the subpoena, stating that Asta Medica "failed to show that the requested discovery is permitted by any of the foreign tribunals involved here as a matter of right and without special leave of and/or supervision by the tribunal." Asta Medica has objected.

For reasons that appear in this opinion, I conclude that an applicant under § 1782(a) need not surmount the hurdles that the Magistrate Judge's decision imposes and that the Magistrate Judge's decision is accordingly incorrect on the law. Since the parties have had an abundant opportunity to submit all their legal arguments as well as affidavits concerning foreign law, I will resolve the matter rather than resubmit it to the Magistrate Judge.[1] Since this is a case of first impression in this Circuit, a thorough review of the language and history of the statute is in order.

### Section 1782

Two important contextual observations. First, this is not a "discovery" case in the American sense of the term. This is not a search simply for information "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). In-stead, what the applicant seeks here are testimony and documents that can be used in a foreign tribunal under a statute specifically tailored to that end. 28 U.S.C. § 1782(a); *cf. In re Letter of Request from the Crown Prosecution Serv. of the U.K.,* 870 F.2d 686, 693 (D.C.Cir.1989).

Second, and in any event, the statutory language in question was enacted in 1964, before today's severe disquiet over discovery abuse. In the early 1960's most observers viewed the search for information we sometimes call "discovery" as a positive attribute of American judicial processes rather than as a source of the abuse, delay and cost decried by today's critics. The content of § 1782 cannot be fully appreciated outside this historical context.

In amending § 1782 in 1964,[2] Congress substantially broadened the power of federal courts to assist foreign litigants. The Senate Report stated explicitly that "the proposed revision of section 1782 ... clarifies and *liberalizes* existing U.S. procedures for assisting foreign and international tribunals *and litigants* in obtaining oral and documentary evidence in the United States...." Senate Report, *supra,* at 3788 (emphasis supplied). A spirit of openhandedness permeates the amendment. For ex-

---

**1.** Review of legal rulings is always without deference. Since I disagree with the Magistrate Judge's legal ruling and since he based his decision on application of that ruling, this is not a case in which deference to an exercise of discretion or findings of fact is called for. Consequently, I treat the case *de novo.* Since I have found the legal standard used by the Magistrate Judge to be incorrect, *de novo* review is appropriate regardless of whether the Magistrate Judge's decision is considered dispositive or nondispositive under Fed.R.Civ.P. 72 and regardless of which statutory category it fits under 28 U.S.C. § 636 (the statute does not refer to the categories "dispositive" or "nondispositive" but lists specific matter for *de novo* review and places the rest under the clearly erroneous or contrary to law standard).

**2.** The legislation was drafted by the United States Commission on International Rules of Judicial Procedure, which was created by an act of Congress in 1958. Pub.L. No. 85–906, 72 Stat. 1743 (1958), *reprinted in,* 1958 U.S.C.C.A.N. 2097. The purpose of the Commission was, *inter alia,* to "investigate and study existing practices of judicial assistance and cooperation between the United States and foreign countries with a view to achieving improvements." *Id.* Congress also established an Advisory Committee to assist the Commission. The Commission and the Advisory Committee worked closely with the Columbia Law School Project on International Procedure. In addition to the official legislative history of the 1964 act, as set forth in the Senate Report, S.Rep. No. 1580, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782 [hereinafter "Senate Report"], valuable insight can also be gained from the writings of members of the Commission and Advisory Committee. Professor Hans Smit of Columbia University, who served as Reporter to the Commission and also as the Director of the Columbia Law School Project on International Procedure, wrote a valuable article entitled *International Litigation Under the United States Code,* 65 Colum.L.Rev. 1015 (1965) [hereinafter "Smit, *International Litigation* "]. Additionally, the Chairman of the Advisory Committee, Philip W. Amram, Esq., authored *Public Law No. 88–619 of October 3, 1964—New Developments in International Judicial Assistance in the United States of America,* D.C.B.J., Jan. 1965, at 24 [hereinafter "Amram, *New Developments* "].

ample, Congress expanded the class of litigation in which § 1782 could be used, specifying that district courts could now assist international courts as well as foreign courts. Congress also broadened the category of institutions that could seek assistance by using the term "tribunal" so that various administrative proceedings would be covered as well.[3] Another liberalization was deletion of the requirement that foreign litigation actually be pending. Under the revision of the statute, "[i]t is not necessary ... for the proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding." *See* Smit, *International Litigation, supra,* at 1026.[4] Of particular relevance in this case is the addition of language allowing private litigants to use the statute. Before 1964, letters rogatory were the only method available for obtaining testimony or documents under § 1782, a procedure requiring the foreign tribunal or official to initiate the process. The 1964 amendment added a new method: proceedings could thereafter begin "upon the application of any interested person." Thus, actual litigants can now seek a federal court's assistance on their own.[5] But Congress has provided no standard to guide the courts' determination of when to

grant such assistance. Instead, it has left this decision wholly discretionary. In light of what we now know in 1992 about litigation costs and American discovery abuses, the 1964 amendment to § 1782 may appear naive. It is, nonetheless, the statute that Congress drafted.

The broadened power of the district courts under amended § 1782 was expressly designed to make the federal judicial system more generous in its assistance to foreign litigation. Both the legislative history and academic commentary bear out this reading of the statute.[6] The central inspiration for much of the work was a belief that if the United States were liberal with assistance in foreign litigation, foreign courts might later follow suit.[7] Thus, as the Senate Report put it, the goal of § 1782 was to "facilitate the conduct of [foreign] litigation." Senate Report, *supra,* at 3783. Federal courts should, therefore, look askance at any interpretation that limits judicial discretion and makes it more difficult to obtain assistance requested in good faith under § 1782.

A rule requiring that the requested material first be shown to be discoverable in the foreign jurisdiction—the rule that Pfizer

---

**3.** Senate Report, *supra,* at 3788–89. *See also* Smit, *International Litigation, supra,* at 1027 ("This simple extension [to international tribunals] of the aid rendered to foreign tribunals eliminates the undesirable limitations" of the predecessor statute.); *id.* at 1026 n. 71 ("The term 'tribunal' embraces all bodies exercising adjudicatory power, and includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies," as well as more conventional courts.)

**4.** That statement by the Reporter to the Commission on International Judicial Procedure has recently been criticized in a law review student comment. Comment, *Much Ado About 1782: A Look at Recent Problems with Discovery in the United States for Use in Foreign Litigation Under 28 U.S.C. § 1782,* 20 U.Miami Inter–Am.L.Rev. 429, 439–40 (1989) [hereinafter "Comment, *Much Ado* "]. *See generally* Comment, *Judicial Assistance: Obtaining Evidence in the United States, Under 28 U.S.C. § 1782, for Use in a Foreign or International Tribunal,* 5 B.C.Int'l & Comp.L.Rev. 175, 181–88 (1982).

**5.** The Senate Report recognized that "[a] request for judicial assistance under the proposed revi-

sion may ... be made in a direct application by an interested person, such as ... a party to the foreign ... litigation." Senate Report, *supra,* at 3789; *see also* Smit, *International Litigation, supra,* at 1027.

**6.** Senate Report, *supra,* at 3783 ("Enactment of the bill into law will constitute a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects."); *See also* Smit, *International Litigation, supra,* at 1018 ("The reforms ... lay heavy stress on the desirability of the absence and if necessary the unilateral removal, of all unnecessary impediments [to judicial assistance in foreign litigation].."); Comment, *Much Ado, supra,* at 431 (Section 1782 placed "the United States on the cutting edge of assisting in international discovery. ﹐.

**7.** Senate Report, *supra,* at 3783 ("It is hoped that the initiative taken by the United States in improving its procedures will invite foreign countries to similarly adjust their procedures.").

persuaded the Magistrate Judge to adopt here—would be a severely onerous burden on both applicants and judges. In this case, for example, the lawyers have seen fit to present me with legal opinions from a variety of lawyers concerning the law of four separate foreign jurisdictions—the United Kingdom, France, the Netherlands and Belgium—and ask me to determine their respective laws on the taking of testimony and documents in reaching my decision on what is only a collateral issue to the proceedings underway or contemplated in the courts of those various countries. There is absolutely no evidence in the statute, the legislative history or the academic commentary explaining the statute's enact-

ment that suggests any congressional desire to impose on American courts the burden of investigating foreign law on matters such as admissibility of the evidence,[8] its discoverability in the American or any other sense,[9] or the authority of foreign tribunals to order such testimony or documents in aid of their own judicial proceedings. In the absence of any suggestion that Congress intended to impose such a burden, and given that Congress was seeking to *liberalize* the processes available to foreign litigants seeking evidence here, I conclude that resolution of these foreign law issues is not necessary to the exercise of § 1782 discretion.[10] *A fortiori* I conclude,

8. Several courts have agreed that it simply is not feasible for federal district courts to examine evidentiary admissibility under foreign law. That issue is difficult enough in applying American law until the proceedings are actually under way in trial. *See John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132, 136 (3rd Cir.1985) ("To require that a district court undertake ... [an] extensive inquiry into the laws of the foreign jurisdiction would seem to exceed the proper scope of section 1782."); *In re Request for Judicial Assistance from the Seoul Dist. Criminal Court, Seoul, Korea,* 555 F.2d 720, 723 (9th Cir. 1977) ("In our judgment our federal courts, in responding to requests, should not feel obliged to involve themselves in technical questions of foreign law relating to subject-matter jurisdiction of foreign or international tribunals, or the admissibility before such tribunals of the testimony or material sought."); *see also In re Letters Rogatory from the Tokyo Dist., Tokyo, Japan,* 539 F.2d 1216, 1219–20 (9th Cir.1976); *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 117 F.R.D. 177, 179–80 (S.D.Fla.1987), *aff'd on other grounds,* 848 F.2d 1151, 1156 (11th Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (19); *In re Letters Rogatory from the Supreme Court of Ontario, Canada,* 661 F.Supp. 1168, 1171 (E.D.Mich.1987).

9. Some courts have required a determination that the testimony sought would be discoverable in the foreign jurisdiction. *See In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 848 F.2d 1151, 1156 (11th Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989) ("While a district court generally should not decide whether the requested evidence will be admissible in the foreign court, ... the district court must decide whether the evidence would be discoverable in the foreign country before granting assistance"); *accord, Lo Ka Chun v. Lo To,* 858 F.2d 1564, 1566 (11th Cir.1988); *In re Court of the Comm'r of Patents for the Republic of South Africa,* 88

F.R.D. 75, 77 (E.D.Pa.1980) ("Clearly, this Court should not by its exercise of the discretion allowed it under section 1782 allow litigants to circumvent the restrictions imposed on discovery by foreign tribunals."). Even in *John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132, 136 (3rd Cir.1985), a case in which the Third Circuit cautioned against "extensive inquiry into the laws of the foreign jurisdiction," the court, in reversing a district court's denial of assistance under § 1782, relied nonetheless on a finding that "the testimony sought would generally be subject to discovery were all the parties in [the foreign forum]."

These decisions place the American court back in the quandary of defining foreign law and procedure—an onerous task for what should be only a *pro forma* proceeding and not the main event. They appear to be based upon some fear of offending foreign tribunals. Congress showed no such fear, however, in enacting a statute that does not depend on reciprocity, *see John Deere,* 754 F.2d at 135 ("Congress did not intend section 1782 orders to depend upon reciprocal agreements."). I conclude that these decisions from other courts have added unnecessary baggage to the statute that Congress did not intend. As I noted at the outset, "discovery" is not the issue here. The issue is testimony and documents for use in foreign proceedings. Only the foreign tribunals, and not this court, will ultimately determine admissibility. *Accord, In re Letters Rogatory from the Tokyo Dist., Tokyo, Japan,* 539 F.2d 1216, 1219 (9th Cir.1976) (admissibility is not an issue to be determined by the U.S. Court). It is enough for me to determine that the subject matter is generally pertinent and to ensure that improper factors such as harassment and unnecessary expense and delay are minimized.

10. Some courts would agree with this rule, *see In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 117 F.R.D.

contrary to the Magistrate Judge, that an applicant need not show that he could actually obtain the information in the foreign country as a matter of right without special permission from the foreign tribunal.[11]

■ Instead, in granting authority to district judges to order testimony or documents for use in foreign litigation, Congress specifically made its exercise wholly discretionary. Under the statute, a district court "may" order testimony or documents; the statute does not direct the court to do so. I conclude that it is enough to determine that the subject matter is generally pertinent, and that improper goals or effects, such as harassment and unnecessary expense and delay, are minimized. Pfizer

has argued that the information being sought by the applicants here is irrelevant to the foreign litigation and that the request therefore constitutes an abuse of § 1782.[12] I conclude, however, that the applicant Asta Medica has sought testimony and documents that on their face appear to have a bearing on the patents the parties are disputing in the foreign jurisdictions. Here, Pfizer and Moriarty have not demonstrated that the testimony and documents are sought solely for harassment purposes or delay. On the other hand, I cannot determine the utility of the testimony and documents at this stage of the foreign proceedings (the foreign lawyers' affidavits express conflicting views on the subject). I

177, 179–80 (S.D.Fla.1987), *aff'd on other grounds*, 848 F.2d 1151, 1156 (11th Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989); *see also In the Matter of the Application of Malev Hungarian Airlines*, 964 F.2d 97, 100–02 (2nd Cir.1992) (reversing a district court that imposed a rule requiring § 1782 applicants to exhaust discovery procedures in the foreign jurisdiction before invoking assistance of U.S. courts on grounds that such a rule violated the policy underlying statute). Other courts have not gone so far.

**11.** Hans Smit, Reporter to the Commission on International Rules of Judicial Procedure, contemporaneously pointed out on more than one occasion that the statute would permit foreign litigants to obtain evidence here that they could not obtain in the foreign jurisdiction where they wanted to use the evidence. *See, e.g.,* Hans Smit, *Introduction,* in *Columbia University School of Law Project on International Procedure* 1, 8 (Hans Smit ed., 1965) ("The liberal assistance provided by American courts may well give the foreign court or litigant a more effective device of compelling the production of tangible evidence in the United States than is available in the foreign country."); Smit, *International Litigation, supra,* at 1026 (In many foreign countries parties cannot be witnesses and their statements are not considered testimony; nevertheless § 1782 "makes clear that the district court may order that parties and other persons, whose statements do not qualify as testimony under foreign practice, may be heard.").

Along these lines, the British House of Lords has held that British courts should not enjoin a party from initiating a § 1782 request to take testimony in the United States even though a British court would not order the discovery itself. *South Carolina Ins. Co. v. Assurantie*

*Maatschappij "De Zeven Provincien" N.V.,* [1987] 1 App.Cas. 24 (H.L.). Similarly, in *John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132, 138 (3rd Cir.1985), the Third Circuit—despite its language quoted in n. 9, *supra*—ruled that "[t]he fact that the Canadian court may question its own power to devise and grant an order for the discovery of a corporate employee resident outside its jurisdiction cannot constrain this court in the application of section 1782." The Third Circuit also stated:

> Indeed, to condition issuance of a section 1782 order upon the trial court's estimate of the foreign jurisdiction's likelihood of granting letters rogatory not only would force American courts to predict the actions of another country's tribunal, but also would contradict the express purpose of section 1782. We do not believe that Congress intended litigants interested in foreign proceedings to resort to section 1782 only upon an adequate showing that they could obtain letters rogatory from the foreign forum. Such a reading would virtually nullify the statutory provision that "interested persons" may apply for discovery orders.

*Id.* at 136. *Accord, In the Matter of the Application of Malev Hungarian Airlines,* 964 F.2d 97, 100–02 (2nd Cir.1992).

**12.** The challenge is based largely on the procedural status of the litigation in the different countries: in France the patent contest is on appeal; in the United Kingdom the service of process has only recently been perfected and the litigation is still at a nascent stage; the litigation in the Netherlands is over a patent that allegedly pre-dates Pfizer's dealings with Ankerfarm and is thus collateral; and in Belgium, court approval of discovery is necessary, but has not yet been obtained. Memorandum in Opposition to Applicant's Appeal, at 4–5 (October 16, 1991).

conclude that in order to minimize any possibility of harassment, unnecessary expense or delay, it is appropriate and within the exercise of a sound discretion to order Asta Medica to pay the reasonable attorney fees in connection with the taking of the testimony and documents.[13]

Accordingly, the decision of the Magistrate Judge is hereby VACATED and the application of Asta Medica, S.A. for an order to take the testimony of David W. Moriarty, Jr. and subpoena duces tecum is GRANTED upon the condition that Asta Medica pay to Pfizer the reasonable attorney fees for one attorney to travel to, attend and participate in the deposition and taking of documents.

### Multidistrict Cases

### (Docket Nos. 92–6–P–H, 92–7–P–H, 92–8–P–H, 92–9–P–H)

The applicants have attempted to use § 1782 to subpoena several other Pfizer employees living in other states. They are: Thomas Mott Brennan in California; Hermann Faubl in Illinois; Barry Malcom Bloom and Irving Maurice Goldman in Connecticut; and Irving Maurice Goldman in New York (the applicants attempted to subpoena Goldman in New York, but later learned that he lived and worked in Connecticut). All these individuals are present or former Pfizer employees who were somehow involved in Pfizer's negotiations with Ankerfarm in the early 1970's. Pfizer has opposed all the applications.

On September 16, 1991, Pfizer filed a motion before the Judicial Panel on Multidistrict Litigation ("JPMDL") requesting that the panel consolidate all the cases and transfer them either to the District of Maine or to the Northern District of Illinois. On December 16, 1991, the Panel transferred all the cases to the District of Maine, noting that the action here was the most advanced of the five.

I have not yet consolidated these cases, and my decision in Civil No. 91–328–P–H thus focuses only on the application to take discovery from David W. Moriarty. However, there are no apparent major distinctions between this case and the cases transferred here by the JPMDL. The parties therefore have 14 days from the date of this decision to SHOW CAUSE why those cases should not be controlled by the decision in Civil No. 91–328–P–H.

### Joinder

■ Finally, a Portuguese company called Hovione Sociedade Quimica, S.A. (hereinafter "Hovione") has filed a motion to join the subpoena litigation begun by Asta Medica. Pfizer objects on the ground that this motion should properly be captioned a motion to intervene under Rule 24 of the Federal Rules of Civil Procedure, rather than as a motion to join under Rule 20.

I first note that an application for assistance under § 1782 is a somewhat atypical procedure. It does not fit comfortably within the contours of the Federal Rules of Civil Procedure, which contemplate adversarial trial-type proceedings. Nonetheless, I think it is most appropriate to treat Hovione's motion as a motion to intervene. Such treatment is consistent with Rule 1's admonition to construe the Federal Rules so as to "secure the just, speedy, and inexpensive determination" of matters before the Court. I find that the papers filed by Hovione thus far adequately demonstrate that Hovione's request has questions of law and fact in common with the application of Asta Medica. Fed.R.Civ.P. 24(b). I further conclude that the motion is timely under the test most recently articulated by the First Circuit in *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir.1992).

■ The First Circuit held in *Banco Popular* that four factors must be con-

---

**13.** According to the Senate Report, the statute "leaves the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable.... The terms the court may impose include provisions for fees for opponents' counsel, attendance fees of witnesses, fees for interpreters and transcribers of the testimony and similar provisions." Senate Report, *supra*, at 3788. *See also Malev Hungarian Airlines v. United Technologies Int'l, Inc.*, 964 F.2d 97, 102 (2nd Cir.1992) (suggesting that on remand the district court require applicant to abide by a discovery plan).

sidered when passing on the timeliness of a motion to intervene: the putative intervenor's knowledge of the pending action, the prejudice to the movant, prejudice to the non-movant, and any exceptional circumstances militating for or against intervention.

■ Hovione's motion came seven months after the initial application by Asta Medica and five months after the case was appealed to this court. The motion was filed before oral argument was held and counsel for Hovione was present at the oral argument. Hovione attempted intervention when it could still make contributions to the protection of its rights and interests. I thus find that Hovione's motion is reasonably prompt. *Id.* at 1231.

I see no substantial prejudice accruing to Pfizer if this motion is granted. The burden of having another party present at Moriarty's deposition is minimal. If the motion were denied Hovione could file an application for assistance on its own. This is a small burden, but would involve unnecessary expense and delay. Moreover, as the First Circuit noted in *Banco Popular*, since Hovione "enjoys a significant probability of success on the merits" in the action presently before the court, *id.* at 1232, denying intervention would, therefore, be prejudicial to Hovione.

Finally, the unique procedural status of this case and the interest in judicial and clerical economy both militate in favor of granting the motion. The issue before the court is fairly narrow on both factual and legal grounds; since it seems clear that the information Hovione seeks is essentially identical to that sought by Asta Medica, allowing intervention imposes no burden. Denying the motion would cause the commencement of a new round of filings, simply delaying the resolution of Hovione's request.

Accordingly, Hovione's motion is GRANTED.

SO ORDERED.