981 F.2d 1
 61 USLW 2352, 25 U.S.P.Q.2d 1861
 In re Application of ASTA MEDICA, S.A., et al., for an Order
to Take Discovery of David W. Moriarty, Jr., and for a
Subpoena Duces Tecum, for use in Foreign Countries in Civil
Proceedings there Pending,
Pfizer, Inc. and David W. Moriarty, Jr., Appellants.
In re Application of ASTA MEDICA, S.A., et al., for an Order
to Take Discovery of Hermann Faubl and for a
Subpoena Duces Tecum, for use in Foreign
Countries in Civil Proceedings
there Pending,
Pfizer, Inc. and Hermann Faubl, Appellants.
In re Application of ASTA MEDICA, S.A., et al., for an Order
to Take Discovery of Thomas Mott Brennan and for a
Subpoena Duces Tecum, for use in Foreign
Countries in Civil Proceedings
there Pending,
Pfizer, Inc. and Thomas Mott Brennan, Appellants.
In re Application of ASTA MEDICA, S.A., et al., for an Order
to Take Discovery of Pfizer, Inc. and Irving Maurice Goldman
and for a Subpoena Duces Tecum, for use in Foreign Countries
in Civil Proceedings there Pending,
Pfizer, Inc. and Irving Maurice Goldman, Appellants.
In re Application of ASTA MEDICA, S.A., et al., for an Order
to Take Discovery of Barry Malcolm Bloom and Irving Maurice
Goldman and for a Subpoena Duces Tecum, for use in Foreign
Countries in Civil Proceedings there Pending,
Barry Malcolm Bloom and Irving Maurice Goldman, Appellants.
 Nos. 92-1663, 92-1726 to 92-1729.
 United States Court of Appeals,
First Circuit.
 Heard July 29, 1992.
Decided Dec. 4, 1992.
 
 Stephen D. Brown, with whom Bernard J. Bonn, III, Timothy C. Blank, Joseph A. Tate, Dechert Price & Rhoads, Philadelphia, Pa., Rudolf E. Hutz, and Connolly, Bove, Lodge & Hutz, Wilmington, Del., were on brief, for appellants.
 Zachary Shimer, with whom Stuart D. Baker, W. Colm McKeveny, Chadbourne & Parke, New York City, Michael A. Nelson, Deborah M. Mann, Jensen Baird Gardner & Henry, Portland, Me., John D. Murnane, Brumbaugh, Graves, Donohue & Raymond, Marvin C. Soffen and Ostrolenk, Faber, Gerb & Soffen, New York City, were on brief, for appellees Asta Medica, S.A., Dagra BV, Laboratoires Sarget, S.A., NAPP Laboratories Ltd., and Hovione Sociedade Quimica, S.A.
 Before TORRUELLA and BOUDIN, Circuit Judges, and KEETON,* District Judge.
 TORRUELLA, Circuit Judge.
 
 
 1
 Pursuant to 28 U.S.C. § 1782(a),[1] district courts are authorized to assist foreign and international tribunals, and the litigants before such tribunals, in obtaining discovery in the United States for use in proceedings abroad. In this appeal, we examine whether an applicant under 28 U.S.C. § 1782(a) has to make a threshold showing, prior to obtaining such discovery, that the information sought in the United States would generally be subject to discovery in the foreign jurisdiction. The United States District Court for the District of Maine held that such a requirement was not necessary and entered an order granting a request for discovery. In re Application of Asta Medica, S.A., 794 F.Supp. 442 (D.Me.1992). We reverse.
 
 
 2
 * Appellant Pfizer, Inc. ("Pfizer") is involved in patent litigation proceedings in Europe against Asta Medica, S.A., Laboratories Sarget, S.A., Dagra, BV, and Napp Laboratories, Ltd. (collectively "the foreign companies"), four European pharmaceutical companies. Litigation is pending in France, Belgium, England and the Netherlands over a patent owned by Pfizer for several methods to manufacture the antibiotic doxycycline.
 
 
 3
 The process of the patent at issue involves homogeneous catalyzed production of doxycycline. The foreign companies assert that Pfizer derived the invention of the process from an Italian company, Ankerfarm, S.p.A. ("Ankerfarm"), in the early 1970's while Pfizer and Ankerfarm negotiated a proposed joint venture involving the new process. In 1971 and 1972, Pfizer employees met with Ankerfarm employees working on the doxycycline processing technology in Milan and allegedly learned the characteristics of the invention. Although the joint venture between Ankerfarm and Pfizer never materialized, Pfizer obtained its own patents on the process. The foreign companies want to establish that the process was in the public domain before Pfizer applied for the patent and therefore, Pfizer's patents are invalid. They, therefore, seek to obtain documents and the testimony of former Pfizer employees who were involved in Pfizer's transactions with Ankerfarm. In July of 1991, they filed an ex parte application under 28 U.S.C. § 1782 in the United States District Court for the District of Maine requesting a subpoena compelling David W. Moriarty, a retired employee of Pfizer Inc., to testify by deposition and produce documents.[2] On July 24, 1991, Magistrate Judge Cohen granted the ex parte application and the subpoena was issued. On August 12, 1991, however, Pfizer moved to quash the subpoena on the ground that a private party invoking a district court's assistance under Section 1782 had to show that the requested information was discoverable in the foreign jurisdiction. In an affidavit, Pfizer's general patent counsel asserted that the information sought by the foreign companies in fact would not be available and could not be used in the foreign proceedings.
 
 
 4
 The foreign companies opposed Pfizer's motion by filing affidavits from foreign lawyers asserting that the evidence was obtainable in each country if the witness was found there. Pfizer responded with affidavits from foreign lawyers maintaining that as a general matter there is no pretrial availability of information from non-party witnesses in France, Belgium, England and the Netherlands. Only in an extraordinary case, where a litigant has obtained judicial approval, may a litigant compel the testimony or production of documents of a non-party witness.
 
 
 5
 On September 10, 1991, Magistrate Judge Cohen granted Pfizer's motion to quash and rescinded the July 24, 1991 order issuing the subpoena. The foreign companies sought review of the Magistrate Judge's order before the district court.
 
 
 6
 On May 22, 1992, the district court issued an order vacating the Magistrate Judge's decision and granting the application for an order to take testimony and a subpoena duces tecum. In re Application of Asta Medica, S.A., 794 F.Supp. 442 (D.Me.1992).[3] Pfizer appealed and filed a motion for a stay pending appeal. We granted Pfizer's motion for a stay and heard the appeal on an expedited basis.
 
 II
 
 7
 The proceedings in Europe involve different parties and patents and various stages of prosecution. Since a description of these proceedings is not critical to the resolution of this appeal, we provide only a limited summary of the litigation pending in each country.
 
 A. Proceedings in France
 
 8
 In 1980, Pfizer and its French subsidiary sued the French applicant, Laboratories Sarget, S.A., ("Sarget") for patent infringement. In 1988, the trial court ruled that there was no patent infringement. In April of 1990, the Paris Court of Appeal overturned that ruling and appointed an expert to determine the damages question. An appeal filed by Sarget is currently pending before the Cour de Cassation, France's highest court.
 
 
 9
 Pfizer asserts that the validity or infringement of the patent is not at issue since the briefing stage of the appeal is complete and the authority of the Cour de Cassation is limited only to issues of law. The foreign companies argue that validity of the patent is relevant to the damages issue.
 
 
 10
 Pfizer also sued Hovione for patent infringement in Lyon, France. The trial court in Lyon found no infringement, and Pfizer appealed. The companies argue that the evidence sought is pertinent because Hovione is asserting on appeal that Pfizer's patent is invalid.
 
 
 11
 Finally, Sarget and one of its subsidiaries sued Pfizer in Bordeaux petitioning the court to nullify Pfizer's French patent.[4]
 
 B. Proceedings in England
 
 12
 Napp Laboratories, Ltd. ("Napp") has filed a petition asking for the revocation of Pfizer's United Kingdom patents.
 
 
 13
 According to Pfizer, it has no commercial interest in the English patent and the patent "is already subject to licenses of right that can be obtained by anyone in England." Appellant's Brief at 12. Pfizer asserts that Napp has brought a sham nullity proceeding in England to show in the Section 1782 application that there is a British "proceeding." Napp argues that "[t]he record in the United Kingdom proceeding is also open." Appellees' Brief at 12.
 
 C. Proceedings in Belgium
 
 14
 Pfizer sued Asta Medica, S.A. ("Asta") claiming that Asta infringed its Belgian process patent. The Belgian court referred the matter to a panel of experts who found no infringement of Pfizer's patent. Pfizer is contesting this finding.
 
 D. Proceedings in the Netherlands
 
 15
 A dispute over an application filed by Pfizer for a Dutch patent is pending before the Patent Council in The Hague. The application was originally filed by Ankerfarm in 1973 and assigned to Pfizer by Glaxo Limited Group, a British pharmaceutical firm, pursuant to an agreement dated March 12, 1984. Dagra, BV ("Dagra") is opposing the grant of the patent. On September 10, 1988, Pfizer gave Dagra notice of its intent to sue for infringement upon issuance of its patent.
 
 
 16
 Pfizer has also brought a separate patent infringement action against Dagra in Amsterdam. This proceeding is pending before the district court in Amsterdam.
 
 
 17
 Dutch law allows a party to file a request with the court for a preliminary hearing of witnesses to establish a factual basis to bring suit. Dagra filed such a request in order to sue Pfizer under Dutch and European Economic Community antitrust law for Pfizer's use of its patents. Dagra identified a number of witnesses in Europe and the United States. The Dutch trial court denied the request for a preliminary hearing. Dagra appealed, but before the Dutch appellate tribunal ruled on the dispute, Pfizer mooted Dagra's request by waiving its right to enforce its patent in Holland against Dagra, any of its customers and its supplier Hovione.
 
 III
 The District Court's Decision
 
 18
 We ordinarily review the district court's decision to grant the foreign companies application under 28 U.S.C. § 1782 for abuse of discretion. See, e.g., In re Application Of Malev Hungarian Airlines, 964 F.2d 97 (2d Cir.1992); In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d 1151, 1154 (11th Cir.1988), cert. denied, 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989). Nevertheless, limitations imposed by or implicit in the statute must control any exercise of discretion and in this case we believe that such a limitation was disregarded by the district court.
 
 
 19
 The district court examined the legislative history of Section 1782 and noted that in amending Section 1782 in 1964, Congress expanded broadly "the power of federal courts to assist foreign litigation." In re Application of Asta Medica, S.A., 794 F.Supp. at 445. By the amendment, Congress (1) allowed private litigants and foreign courts for the first time to use Section 1782; (2) expanded the authority of federal courts in order to assist in obtaining documentary evidence; (3) used the term "foreign tribunal" rather than "courts" to enlarge the assistance beyond conventional courts; and (4) eliminated the requirement that litigation be pending before assistance may be granted. See generally In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d at 1153-54.
 
 
 20
 Given the expansion in discretion provided by the 1964 amendment to Section 1782, the district court concluded that a rule requiring an applicant to make a threshold showing that the information sought in the United States is discoverable in the foreign jurisdiction would limit judicial discretion excessively and would place an "onerous burden on both applicants and judges." In re Application of Asta Medica, S.A., 794 F.Supp. at 445-46. The district court reasoned as follows:
 
 
 21
 There is absolutely no evidence in [Section 1782], the legislative history or the academic commentary explaining the statute's enactment that suggests any congressional desire to impose on American courts the burden of investigating foreign law on matters such as admissibility of the evidence, its discoverability in the American or any other sense, or the authority of foreign tribunals to order such testimony or documents in aid of their own judicial proceedings. In the absence of any suggestion that Congress intended to impose such a burden, and given that Congress was seeking to liberalize the processes available to foreign litigants seeking evidence here, I conclude that resolution of these foreign law issues is not necessary to the exercise of § 1782 discretion.
 
 
 22
 Id. at 446. The district court acknowledged holdings by several courts, including the Third and Eleventh Circuits, imposing as a requirement that the district courts determine whether the information sought here was discoverable in the foreign jurisdiction prior to granting assistance. Id. at 446 n. 9 (citing In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d at 1156; Lo Ka Chun v. Lo To, 858 F.2d 1564, 1566 (11th Cir.1988); John Deere Ltd. v. Sperry Corp., 754 F.2d 132, 136 (3d Cir.1985); In re Court of the Comm'r of Patents for Republic of South Africa, 88 F.R.D. 75, 77 (E.D.Pa.1980)). The district court inferred that these holdings were "based upon some fear of offending foreign tribunals." Id. The court, however, found no merit in this concern with offending foreign tribunals since "Congress showed no such fear ... in enacting a statute that does not depend on reciprocity." Id. In the district court's view, the only inquiry required under Section 1782 is determining whether "the subject matter is generally pertinent and [ensuring] that improper factors such as harassment and unnecessary expense and delay are minimized." Id.
 
 IV
 
 23
 Public Law No. 88-619, 78 Stat. 997 (1964), amended various provisions of the United States Code dealing with foreign and international litigation, including Section 1782. By adjusting the United States judicial procedures to provide more "equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects," Congress hoped to encourage foreign countries to revise their judicial procedures similarly. S.Rep. No. 1580, 88th Cong., 2d Sess. (1964), reprinted in 1964 U.S.C.C.A.N. 3782. The central intent of the 1964 amendments was to
 
 
 24
 clarif[y] and liberalize[ ] existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States and adjust[ ] those procedures to the requirements of foreign practice and procedure.
 
 
 25
 Id. at 3788 (emphasis added). The district court's interpretation of Section 1782 as changing the scope of discovery available to litigants abroad contradicts these purposes.
 
 
 26
 Under the district court's ruling, a United States party involved in litigation in a foreign country with limited pre-trial discovery will be placed at a substantial disadvantage vis-a-vis the foreign party. All the foreign party need do is file a request for assistance under Section 1782 and the floodgates are open for unlimited discovery while the United States party is confined to restricted discovery in the foreign jurisdiction. Congress did not amend Section 1782 to place United States litigants in a more detrimental position than their opponents when litigating abroad. This result would be contrary to the concept of fair play embodied in United States discovery rules and the notion that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist., 482 U.S. 522, 540 n. 25, 107 S.Ct. 2542, 540 n. 25, 96 L.Ed.2d 461 (1987) (quoting Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947)).
 
 
 27
 The district court's holding has another serious shortcoming; foreign litigants may use Section 1782 to circumvent foreign law and procedures. The information sought under Section 1782 may not be available in the foreign jurisdiction due to either procedural restrictions or the substantive law. In amending Section 1782, Congress did not seek to place itself on a collision course with foreign tribunals and legislatures, which have carefully chosen the procedures and laws best suited for their concepts of litigation. To illustrate, in a purely domestic litigation in a foreign jurisdiction with restrictive pre-trial discovery procedures, a litigant may request the foreign tribunal to issue an order compelling the production of information located in the foreign jurisdiction. If such request is denied and the same information is located in the United States, the litigant may side-step that result by racing here and obtaining the information under Section 1782. Not only would this interpretation of Section 1782 allow a litigant to use United States law to gain an unfair advantage over its adversary in a purely foreign litigation, but more importantly, foreign countries may be offended by the use of United States procedure to circumvent their own procedures and laws.
 
 
 28
 In order to avoid offending foreign tribunals, other courts have established, as a prerequisite to granting a request for assistance under Section 1782, a threshold showing that the information would be discoverable in the foreign jurisdiction if located there. In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d at 1156 ("the district court must decide whether the evidence would be discoverable in the foreign country before granting assistance"); Lo Ka Chun, 858 F.2d at 1566 (remanding for determination as to whether evidence sought in the United States is discoverable in Hong Kong); John Deere Ltd., 754 F.2d at 136 ("Concern that foreign discovery provisions not be circumvented by procedures authorized in American courts is particularly pronounced where a request for assistance issues not from letters rogatory, but from an individual litigant"); In re Court of the Comm'r of Patents for Republic of South Africa, 88 F.R.D. at 77 ("Few actions could more significantly impede the development of international cooperation among courts than if the courts of the United States operated to give litigants in foreign cases processes of law to which they were not entitled in the appropriate foreign tribunals."). See also In re Application Of Malev Hungarian Airlines, 964 F.2d 97 (2d Cir.1992) (district court abused its discretion by holding that Section 1782 applicant must seek information first in Hungarian court when such information was readily discoverable pursuant to Hungarian procedure).
 
 
 29
 The district court, however, rejected these decisions since it found no merit in these courts' concern with offending foreign tribunals because "Congress showed no such fear ... in enacting a statute that does not depend on reciprocity." In re Application of Asta Medica, S.A., 794 F.Supp. at 444 n. 9. In this sense, the district court confused Congress' unilateral decision to broaden the procedures to obtain evidence in the United States for use abroad--without regard to whether other nations would reciprocate--with the concept of comity.[5] The district court apparently viewed Congress' purported intent in amending Section 1782 as demonstrating an absolute indifference to international comity. As noted above, this interpretation of the amendment is flatly contradicted by the legislative history and the purported goals of Section 1782.
 
 
 30
 United States discovery rules are far more liberal than their foreign counterparts. See, e.g., Boreri v. Fiat S.P.A., 763 F.2d 17, 19 (1st Cir.1985) ("In [civil law] countries, discovery [United States]-style is often considered an affront to the nation's judicial sovereignty."). Section 1782 was amended to provide efficient discovery procedures to foreign and international litigants seeking information here and to stimulate foreign countries to follow the lead of the United States and liberalize their own procedure. In re Application of Malev Hungarian Airlines, 964 F.2d at 100. Interpreting Section 1782 as a congressional mandate to allow discovery as long as "the subject matter is generally pertinent," although such discovery may not be available in the foreign jurisdiction--in fact, it might be prohibited--would lead some nations to conclude that United States courts view their laws and procedures with contempt. In this manner, the broader goal of the statute--stimulating cooperation in international and foreign litigation--would be defeated since foreign jurisdictions would be reluctant to enact policies similar to Section 1782.
 
 
 31
 The district court refused to determine whether the information sought would be available under foreign law since, in its view, such an inquiry placed "a severely onerous burden on both applicants and judges." Congress, however, intended that the primary burden fall upon the applicant, who has to make a showing that the information is discoverable under foreign law. We are in no position to overrule Congress' policy choice. The only burden that would fall upon the district court is to make a discovery determination based upon the submission by the parties.[6] That is hardly an "onerous" burden.[7] It is true that Section 1782 "leaves the issuance of an appropriate order [to compel the production of evidence] to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable." Senate Report at 3788. This discretion, however, is limited by the restriction that we find--contrary to the district court--to be implicitly required by section 1782, based upon its history, rationale, and the policy considerations we have discussed.
 
 V
 
 32
 We hold that a litigant requesting assistance under Section 1782 has to show that the information sought in the United States would be discoverable under foreign law.
 
 
 33
 Reversed and Remanded.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 28 U.S.C. § 1782(a) provides in pertinent part:
 The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.
 
 
 [2]
 The foreign companies also filed applications under Section 1782 to obtain the testimony of other former and present Pfizer employees. Specifically, the foreign companies seek to depose two former Pfizer employees, Hermann Faubl, a resident of Illinois, and Thomas Mott Brennan, a resident of California. Pfizer credited these men with being the inventors of the patented process. The companies also seek to depose two Pfizer employees, Irving Maurice Goldman and Barry Malcolm Bloom, both residents of Connecticut, who were supervisors in Pfizer's laboratory at the time the process in question. In addition, the foreign companies seek documents from Pfizer in New York
 On September 16, 1991, Pfizer moved before the Judicial Panel on Multi-District Litigation to consolidate all of these applications in the District of Maine. The foreign companies consented to the consolidation. On December 16, 1991, the panel ordered the transfer of the four other proceeding to the District of Maine on the ground that the Maine application was the most advanced.
 
 
 [3]
 The district court also permitted Hovione Sociedade Quimicas, S.A. ("Hovione") to join the litigation. Pfizer has not appealed this ruling
 
 
 [4]
 Neither of these other two proceedings was mentioned in Pfizer's brief
 
 
 [5]
 International comity refers to
 the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.
 Hilton v. Guyot, 159 U.S. 113, 163-64, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895).
 
 
 [6]
 The district court need not explore whether the information the applicants seek is admissible in the foreign jurisdiction or other issues of foreign law. See John Deere Ltd., 754 F.2d at 136; In re Request for Judicial Assistance from Seoul Dist. Criminal Court, 555 F.2d 720, 723 (9th Cir.1977)
 
 
 [7]
 The district court may find an exceptional case in which determining whether the information is discoverable in the foreign jurisdiction becomes an elusive task. In such a case, the district court has various options, among them, to ask the foreign court to help it decide whether the information is available in the foreign jurisdiction, see In re Application of Malev Hungarian Airlines, 964 F.2d at 102, or to request the assistance of a foreign law expert to clarify whether the information is available or not