United States v. McMullin          05-CR-142-SM  07/03/07

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


United States of America

    v.                                    Criminal No. 05-cr-142-01-SM
                                        Opinion No. 2007 DNH 085
Donald McMullin


**O R D E R**


Defendant moved to withdraw his pleas of guilty to counts 1 and 3 of an indictment charging him with being an unlawful user of drugs in possession of a firearm and ammunition, respectively, in violation of 18 U.S.C. § 922(g)(3).  After a hearing, that motion was denied, for the following reasons.


Defendant's motion was filed after his pleas were accepted and after he was adjudicated guilty of the charged offenses, but before sentencing.  Accordingly, it is his burden to show a fair and just reason for requesting withdrawal of his pleas.  United States v. Parilla-Tirado, 22 F.3d, 368, 371 (1st Cir. 1994); Fed. R. Cr. P. 11(d)(2).  In determining whether a defendant's asserted reasons for withdrawing his pleas meet the "fair and just" standard, courts assess the totality of the circumstances, focusing on four prominent elements:  1) the timing of the withdrawal request; 2) the plausibility of the proffered reason(s); 3) the presence or absence of a protestation of

innocence; and 4) whether the circumstances cast serious doubt on the bona fides of the original plea. United States v. Torres-Rosa, 209 F.3d 4, 8-9 (1st Cir. 2000) (citing Parrilla-Tirado, supra); United States v. Doyle, 981 F.2d 591, 594 (1st cir. 1992). Applying that standard, I find that defendant has not shown that a fair and just reason exists such as to permit the withdrawal of his pleas.

1.   **Timing.**

Defendant's pleas were offered and accepted on June 21, 2006.  His motion to withdraw those pleas was not filed until August 15, 2006, nearly two months later.  However, counsel for defendant proffered that defendant had a change of heart within a few days after his plea hearing and attempted to contact his then counsel (Assistant Federal Defender Jonathan Saxe) both directly and through defendant's brother, without success.  And, Attorney Saxe testified at the hearing that he took some time to thoroughly discuss the matter with defendant before filing the motion.  Accordingly, giving defendant the benefit of all doubt, I find that the delay in actually filing his motion to withdraw his guilty pleas should not, under the circumstances, weigh against him.

**2.** **Plausibility of the Proffered Reasons for Withdrawing the Pleas, and the Presence or Absence of a Protestation of Innocence.**

These factors tend to merge somewhat under the circumstances presented. Defendant did not testify in support of his motion, but his pleadings and counsel's argument assert that his reasons for seeking withdrawal include the following:

1. He was pressured into pleading guilty by his prior counsel, who provided constitutionally deficient representation at the change of plea stage of the case;

2. He had only a short period of time to make up his mind whether to plead guilty;

3. He did not understand the law at the time he changed his pleas;

4. He was tired, hungry, disoriented, and confused during the plea hearing.

The principal reason defendant offers for withdrawing his plea is that he did not understand that he had a legal defense to the charges to which he pled, or, relatedly, that he did not understand that he was a "drug user" as that term is used in § 922(g)(3), implying that he might have interposed a defense that he was <u>not</u> a drug user, had he understood the law. Defendant points to precedent[1] holding that a temporal connection or relatedness must exist between drug use and possession of a

_____

[1] See, e.g., <u>United States v. Augustin</u>, 376 F.3d 135, 138 (3d Cir. 2004).

3

firearm (or ammunition) under Section 922(g)(3), and says that had he realized that, he would not have pled guilty to counts 1 and 3, because he was not regularly using marijuana in November of 2004, when the two-plus pounds of marijuana, several firearms, and ammunition were seized from his house.

The seized marijuana was found in a trash bag and in smaller bags around the house (on different levels, where defendant could have easy access to it). Defendant had been diagnosed as suffering to some degree from multiple sclerosis, and he previously claimed to be using marijuana to self-medicate to alleviate the diseases's symptoms.

Defendant's contentions are unsupported, and implausible, for a number of reasons. To begin, at the plea hearing the elements of each offense were explained to him and defendant stated under oath that he understood those elements — specifically, that in November of 2004 he was a drug user and possessed a firearm (Count 1) and ammunition (Count 3).

COURT:
                              * * *

    If this case were to go to trial, in order to
    obtain a conviction on counts - - on count one and
    count three - - or count three, the government would be
    required to prove the following essential elements by
    competent evidence and beyond a reasonable doubt:

4

First, the government would have to prove that you are an unlawful user of a controlled substance. In this case I gather that's marijuana.

MR. SAXE:  That's correct your honor.

COURT:  Secondly, the government would have to prove that at the time of your unlawful use of the marijuana you were in – – with respect to count one, you were in possession of a firearm. And with respect to count three, while using marijuana unlawfully, you were in possession of ammunition.

* * *

Do you understand what I've just explained to you?

DEFENDANT:  Yes.

Later in the colloquy, defense counsel raised a minor issue with regard to the prosecutor's factual proffer — a matter not relevant to the pleas — and stated, "I don't think that changes anything, but." The court then questioned the defendant:

COURT:  All right, with that exception, Mr. McMullin, is what the government's attorney just said true and correct?

DEFENDANT:  It's reasonably close.

COURT:  Well in what way does it differ?

DEFENDANT:  Well, I hadn't been to the house since November 19th, the original search. [Counts 1 and 3 are based upon a search on November 19th.]

(Attorney Saxe consulting with client.)

I guess it's all right.

COURT:  Well, is it true and correct?

5

DEFENDANT: Somewhat.

COURT: All right, well, basically, I know it's a lengthy proffer and probably a lot of it doesn't have to do particularly with the offenses charged. The basic question is, were you in fact using marijuana at a time when you possessed the firearms listed in the indictment?

DEFENDANT: Just count one and three November 19.

COURT: Correct.

DEFENDANT: Yes.

COURT: There's no doubt in your mind about that?

DEFENDANT: No, that's true.

COURT: All right, you were using marijuana unlawfully, you possessed the firearms mentioned in counts one and three, and you agree that those firearms and ammunition traveled in interstate commerce, that is, they were manufactured in some other state?

DEFENDANT: Yes.

Under the terms of defendant's written plea agreement (which he signed earlier on June 6), the government agreed to dismiss counts 5, 6, and 7 of the indictment, in exchange for defendant's agreement to plead guilty to counts 1, 2, 3, and 4. But, on the day of the plea hearing, defendant changed his mind, and refused to plead to counts 2 and 4.

His reason for changing his mind about pleading to counts 2 and 4 — which charged him with being a drug user in possession of firearms (Count 2) and ammunition (Count 4) from on or about

6

September 7 through September 21, 2005 — are illuminating with respect to his decision to go forward in pleading guilty to counts 1 and 3.  Defendant took the position that because he had been held in pretrial confinement on state charges since his arrest on November 19, 2004, he did not qualify as "drug user" in September of 2005, because he hadn't used marijuana while incarcerated.  And, he claimed he did not possess firearms or ammunition at that time, either, because the firearms and ammunition were in his house, which he hadn't been in since his arrest.

Defendant, therefore, obviously understood the requirement under Section 922(g)(3) that his drug use must have been contemporaneous with possession of firearms/ammunition.  Significantly, he raised no such claim with respect to counts 1 and 3, despite the identical nature of those charges, save for the time period alleged.  After further negotiation, the government agreed to amend the plea agreement to provide for dismissal of counts 2 and 4, as well as 5, 6, and 7, in exchange for defendant's pleas to counts 1 and 3.  Defendant proceeded with the plea hearing on that basis.

Defendant also claims that he was coerced by defense counsel (Mr. Saxe) into pleading guilty to counts 1 and 3, and that Saxe

7

did not adequately advise him with regard to the elements of the offenses to which he was pleading guilty, or the possible defenses he might have (i.e., that he was not a "user" within the meaning of the statute), thereby providing him with ineffective assistance at the plea stage. Saxe testified credibly, however, that he spent numerous hours discussing with defendant the "drug user" element, the temporal nexus requirement, that the drug use must be more than a single occasion, or sporadic use remote in time relative to the firearms/ammunition possession and relevant potential defenses. Saxe also credibly denied coercing or forcing defendant into pleading to any charge.

Saxe credibly testified that defendant did not appear to be confused or disoriented in any way when he pled guilty, and that if defendant had seemed to be having any problems in that regard, Saxe would have raised the issue. On that point, the court also questioned the defendant about any medications, drugs, or alcohol that might be affecting his perception or judgment, and he answered that he was only taking Interferon. Defendant gave no indication whatsoever that he was confused, disoriented, or unable to appreciate the nature of the proceedings or to exercise sound judgment on his own behalf. Indeed, his change of mind, and the bases for it, with respect to counts 2 and 4, establish a keen awareness of the relevant law, facts, and any available

8

defenses he might have had to the charges, and belie any claim of confusion or disorientation.

Lastly, defendant not only admitted in this court at the plea hearing that he was indeed a drug user on or about November 19, 2004, he also made that clear in testimony he gave earlier in a parallel state prosecution for possession with the intent to distribute marijuana (arising out of the same search and arrest on November 19 that led to the instant federal charges). In the state prosecution, defendant interposed a successful partial defense — claiming that he possessed the large amount of marijuana found in his house, but not for distribution. Rather, he asserted, the marijuana was strictly for his own personal use. He noted that he suffered from multiple sclerosis and used the marijuana as medication to alleviate its symptoms. Transcript (document no. 57), p. 32. He explained the large amount on hand in terms of both his continuing need to use it and his aversion to getting caught purchasing it. See Transcript (document no. 57), pp. 30-31. (Defendant: "I'd rather [buy it] once than thirty-two times." Id. at 31.) And, Attorney Saxe testified credibly that he fully advised defendant, over many hours, of the nature of available defenses, including what qualified one as a drug user, and what "using" marijuana meant with respect to contemporaneously possessing a firearm. Saxe also reviewed the

government's proposed version of the facts, and revised versions, with defendant before he executed the plea agreement and offered his pleas.

So, defendant's reasons for seeking to withdraw his pleas are not plausible. He was not confused or disoriented at the plea hearing, and was not adversely influenced by any drugs, medications, or alcohol. To the contrary, he was alert, capable, responsive, and exhibited clear awareness of what he was doing and what the consequences could be. Nor was defendant coerced by Attorney Saxe to plead guilty, nor did Saxe provide ineffective assistance. I credit Attorney Saxe's testimony that he fully explained to defendant that a temporal nexus between his unlawful drug use and possession of the firearms/ammunition was required, and that a defense might be asserted in the absence of more than isolated use, or use of drugs remote in time to the firearms/ammunition possession. Defendant's proffer to the contrary is not plausible.

It is not plausible that when he admitted under oath that he used marijuana and possessed firearms and ammunition on or about November 19, 2004, he did not understand that he was in fact a "user" at that time — both because Saxe fully explained the nature of any potential defenses in that regard, and because he

10

admitted to being a user at the plea hearing and had already testified under oath in the state prosecution that he was then a regular user — insisting that the large amount of marijuana seized from his house was not indicative of distribution but was strictly for his personal (medicinal) use, and that he expected to continue using it indefinitely into the future due to his multiple sclerosis.  And, of course, as noted, defendant refused to go forward with his plea agreement on June 21 with respect to counts 2 and 4, specifically because he fully understood that he could interpose a plausible defense to counts 2 and 4, given the dates alleged in those counts — i.e., that he could not have been a user of marijuana in September of 2005, when the additional firearms were found in a secret room of his house, because he had been incarcerated since November of the previous year.  (Had the government charged drug use and possession of those secreted firearms as of November of 2004, that potential defense would of course have been unavailable.)

Nothing in this record supports a claim that Attorney Saxe provided representation that fell below the range of competence expected of counsel in criminal cases, see Strickland v. Washington, 466 U.S. 668 (1984), or that defendant would not have pled guilty to counts 1 and 3 but for such errors.  See Hill v. Lockhart, 474 U.S. 52, 56 (1985).  With respect to counts 1 and

11

3, defendant's pleas were knowing, intelligent, and voluntary. There is no basis to think that defendant either had a plausible defense to those counts, or that he thought he had one at the time of his pleas, or that he was less than fully aware of all potential defenses related to his status as a drug user in possession of firearms/ammunition at the time of his pleas, or that he would not have pled guilty to those charges but for some deficiency in the representation provided by Attorney Saxe.

As noted earlier, the protestation of innocence factor is intertwined with the plausibility of defendant's reasons for seeking withdrawal. It is not entirely clear that defendant is protesting his innocense — he does not say he was not using marijuana in November of 2004 — rather his argument implies the possibility of a degree of use falling below what might qualify him as a "user" within the meaning of the statute. But, his prior admissions in state court, his admissions at the plea hearing, his protestations of innocense as to counts 2 and 4 which led to their negotiated dismissal, and Attorney Saxe's testimony that those specific defenses were fully discussed with defendant, all undermine any such claims as to counts 1 and 3. Moreover, it is plain that defendant was not using marijuana on an isolated occasion or two, remote in time from his possession of firearms/ammunition in November of 2004. Rather he was

12

regularly using marijuana in November of 2004, ostensibly to treat multiple sclerosis, as he testified in state court. His reasons for withdrawing his plea are not plausible and to the extent he is protesting his innocence, that protestation is fully contradicted by the record to the point that it is implausible as well.

### 3.   Whether the Circumstances Cast Serious Doubt on the Bona Fides of the Original Plea.

The circumstances here cast no doubt on the bona fides of the original pleas. Defendant said under oath that he understood the elements of each offense to which he pled guilty and that he had reviewed each charged offense with defense counsel prior to pleading. After declining to plead as provided in the plea agreement, because he determined he might have a defense to counts 2 and 4, he nevertheless voluntarily proceeded to plea to virtually identical counts 1 and 3 (save for the time period alleged), and only now seeks to raise the same issues with regard to counts 1 and 3. And, he was specifically asked to draw his attention to counts 1 and 3 before pleading, which he did.[2]

---

[2]     Defense counsel suggests that defendant did not appreciate that he was pleading to being a drug user in possession of ammunition because the transcript does not disclose a specific reference to ammunition in the government's proffer. But there can be no doubt defendant fully understood and admitted that offense. The elements were explained to him; he acknowledged his understanding of those elements; he acknowledged

13

Defendant's demeanor at the plea hearing was stable, his responses lucid, his answers demonstrated discriminating analysis of the facts as they related to the charges (e.g., clarifying that his pleas were related to the November 19 period), and his refusal to plead to counts 2 and 4, but ready willingness to go forward on counts 1 and 3, all are consistent with knowing, intelligent, and voluntary waivers and pleas.

That defendant had yet another change of mind after having entered valid and binding guilty pleas does not cast doubt on the validity of those pleas or the plea process now.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

July 3, 2007

cc: Debra M. Walsh, Esq.
    William E. Christie, Esq.
    U.S. Probation
    U.S. Marshal

---

reviewing each charge with counsel; counsel affirmed that he reviewed each charge with the defendant, he clarified his position, i.e., "it's true" with respect to both counts, since on November 19 he was using marijuana and possessed ammunition, and he drew his attention to each count before pleading guilty to it.