**In the Matter of the Application of MALEV HUNGARIAN AIRLINES, Plaintiff.**

**MALEV HUNGARIAN AIRLINES, Plaintiff–Appellant,**

v.

**UNITED TECHNOLOGIES INTERNATIONAL INCORPORATED, PRATT & WHITNEY COMMERCIAL ENGINE BUSINESS, Defendant–Appellee.**

**No. 665, Docket 91–7949.**

United States Court of Appeals, Second Circuit.

Argued Nov. 25, 1991.

Decided May 5, 1992.

---

1. For an explanation of how epidemiologists analyze "risk" and "correlation," see Judge Sweet's opinion, 758 F.Supp. at 202.

Robert C. Bata, New York City (Jay P. Mayesh, Stroock & Stroock & Lavan, New York City, Neil P. Coughlan, Reid & Reige, Hartford, Conn., Barry H. Garfinkel, Marco E. Schnabl, Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel), for plaintiff-appellant.

Scott P. Moser, Hartford, Conn. (Day, Berry & Howard, Hartford, Conn., Richard F. Ziegler, Cleary, Gottlieb, Steen & Hamilton, New York City, of counsel), for defendant-appellee.

Before OAKES, Chief Judge, FEINBERG and WALKER, Circuit Judges.

OAKES, Chief Judge:

Malev Hungarian Airlines ("Malev") appeals from an order entered in the United States District Court for the District of Connecticut on September 30, 1991, T. Emmet Clarie, Judge, denying Malev's request to take discovery from United Technologies International, Inc., Pratt & Whitney Commercial Engine Business ("Pratt & Whitney"), pursuant to 28 U.S.C. § 1782 (1988), for use in proceedings before a Hungarian court. Because the district court relied on improper factors in denying Malev's discovery request, we reverse and remand.

## I.

On July 23, 1991, Pratt & Whitney, an airplane engine manufacturer, filed a complaint in the Municipal Court of Budapest, Hungary against Malev, the Hungarian national airline. In the complaint, Pratt & Whitney seeks specific performance of an alleged multi-million dollar December 1990 agreement by Malev to purchase a number of PW4000 jet engines from Pratt & Whitney in connection with the modernization of Malev's fleet of aircraft.

On September 16, 1991, four days after Malev filed its answer in the Hungarian court, Malev initiated this action in the United States District Court for the District of Connecticut. Malev requested that the district court enter an order pursuant to 28 U.S.C. § 1782 permitting discovery of Pratt & Whitney by Malev in the United States. In particular, Malev seeks to de-

pose a number of individuals located in Connecticut who hold various positions with Pratt & Whitney and to obtain eighteen groups of documents purportedly relevant to the litigation in Hungary.

On July 30, 1991, following a hearing on the matter, the district court entered an order denying Malev's request for discovery under 28 U.S.C. § 1782.

We review the district court's decision to deny Malev's request for assistance for an abuse of discretion. *See Lo Ka Chun v. Lo To,* 858 F.2d 1564, 1565–66 (11th Cir. 1988); *In re Request for Judicial Assistance from the Seoul District Criminal Court, Seoul, Korea,* 555 F.2d 720, 723–24 (9th Cir.1977).

## II.

### A.

The genesis of 28 U.S.C. § 1782 (1988)[1] sheds light on the policy aims which Congress sought to effectuate by enacting the legislation. In 1958, Congress created the Commission on International Rules of Judicial Procedure and instructed it to "investigate and study existing practices of judicial assistance and cooperation between the United States and foreign countries with a view to achieving improvements." Pub.L. No. 85–906, 72 Stat. 1743 (1958). The Commission was further told to use that investigation and study as a basis upon which to "draft and recommend to the President any necessary legislation" to render "more readily ascertainable, efficient, economical, and expeditious" the "procedures of our State and Federal tribunals for the render-ing of assistance to foreign courts and quasi-judicial agencies." *Id.*

On May 28, 1963, the Commission transmitted a proposed bill to the Speaker of the House of Representatives and the President of the Senate, following approval by the Administration, which included a provision to amend 28 U.S.C. § 1782 to its current version. In the transmittal letter, which the Senate Judiciary Committee included in its report on the bill, the Chairman of the Commission explained its hope that enactment of the proposed legislation would provide efficient means of assistance in our federal courts for litigants involved in international litigation and would prompt foreign courts to follow our generous example and provide similar assistance to our court systems. S.Rep. No. 1580, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3792–94;[2] *see also In re Letter Rogatory from the Justice Court, Dist. of Montreal, Canada,* 523 F.2d 562, 564–66 (6th Cir.1975).

The Senate Judiciary Committee agreed with the Commission's understanding of the intent behind the legislation and explained in its report:

> Until recently, the United States has not engaged itself fully in efforts to improve practices of international cooperation in litigation. The steadily growing involvement of the United States in international intercourse and the resulting increase in litigation with international aspects have demonstrated the necessity for statutory improvements and other devices to facilitate the conduct of such litigation. Enactment of the bill into law will constitute a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.
>
> The Commission hopes that the initiative taken by the United States in improving its procedures will invite foreign countries similarly to adjust their procedures.... Enactment of the proposed bill should encourage foreign nations to follow the example of the United States.
>
> *Id.* at 3793–94.

---

**1.** 28 U.S.C. § 1782(a) (1988) provides in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person....

**2.** The letter provides in pertinent part:

> Enactment of the proposed bill into law will constitute a major step in bringing the United

States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.

It is hoped that the initiative taken by the United States in improving its procedures will invite foreign countries similarly to adjust their procedures.

*Id.* at 3783; *see also* Hans Smit, *International Litigation Under the United States Code,* 65 Colum.L.Rev. 1015, 1017–19 (1965) (author, who was Reporter of the Commission on International Rules of Judicial Procedure, explaining his view of the purposes behind the legislation in virtually identical terms).

These twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts must inform our analysis of whether the district court abused its discretion by denying Malev's request for assistance in the pending litigation before the Hungarian court. To that task, we now turn.

### B.

In denying Malev's request for discovery, the district court found that Malev's request was "premature and unnecessary" because Malev "never made a formal discovery request upon Pratt & Whitney before the Hungarian court." The district court concluded that discovery procedures are "fully available" to litigants in Hungary and that Malev should have first sought the requested discovery from the Hungarian court.

■ We find nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement of the sort imposed by the district court. To the contrary, the plain language of 28 U.S.C. § 1782(a) states that "upon the application of any interested person," the district court where the person from whom discovery is sought resides "may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."

Furthermore, requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782 as articulated in the legislative history. It would undermine the policy of improving procedures for assistance to foreign and international tribunals by imposing an additional burden on persons seeking assistance from our federal courts for matters relating to international litigation. Additionally, it would undermine the policy of prompting foreign courts to act similarly based on our own generous example.

Finally, as far as we can discern, no other federal court has denied a direct request by a private foreign litigant for discovery pursuant to 28 U.S.C. § 1782 because the party seeking discovery has not first sought the information through the foreign or international tribunal. *See, e.g. John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132, 134 (3d Cir.1985) (granting direct request for discovery from private foreign litigant where discovery had not first been sought from Canadian court).

We appreciate the district court's concern, which was expressed repeatedly during the hearing on Malev's application, that making discovery available through United States district courts to interested persons before foreign and international tribunals could potentially impose heavy burdens on our federal courts. But we are not at liberty to second-guess the policy choices of our Congress. However, we note that district courts issuing discovery orders pursuant to 28 U.S.C. § 1782 may impose conditions to minimize the compliance burdens, so long as those conditions do not impose extra-statutory barriers to obtaining discovery such as an exhaustion requirement. *See* S.Rep. No. 1580, 88th Cong., 2d. Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3788 ("[28 U.S.C. § 1782] leaves the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable."); *see also* Section III, *infra.*

Therefore, to the extent the district court rested its decision to deny discovery to Malev because a request for discovery from Pratt & Whitney had not first been made to the Hungarian court in Budapest, we conclude that the district court abused its discretion. *See Independent Oil & Chem. Workers v. Procter & Gamble*, 864 F.2d 927, 929 (1st Cir.1988) ("Judicial discretion is necessarily broad—but it is not absolute. Abuse occurs ... when an improper factor is relied upon....").

■ The district court also indicated that "[a]bsent a request from the Hungarian court to become involved in the oversight of discovery," it was denying Malev's request. We believe it was improper for the district court to predicate its denial of an application for discovery under 28 U.S.C. § 1782 on the absence of a request for assistance from the Hungarian court.

The plain language of the statute provides that "[t]he order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal *or upon the application of any interested person.*" 28 U.S.C. § 1782(a) (1988) (emphasis added). This language was inserted as part of the effort to liberalize the assistance provided by American courts to foreign and international tribunals.[3] By denying Malev's application in the absence of a request from the Hungarian court, the district court read this provision out of the statute.

The legislative history, case law, and critical commentaries strongly support our conclusion that the provision indeed means what it says. S.Rep. No. 1580, *reprinted in* 1964 U.S.C.C.A.N. at 3789 ("A request for judicial assistance under the proposed revision may either be contained in a letter rogatory or other request *or be made in a direct application by an interested person, such as ... a party to the foreign or*

*international litigation. Subsection (a) specifically so provides.*") (emphasis added); *John Deere*, 754 F.2d at 136; Smit, *supra*, 65 Colum.L.Rev. at 1027; Comment, *Much Ado About 1782: A Look at Recent Problems with Discovery in the United States for Use in Foreign Litigation under 28 U.S.C. § 1782*, 20 U.Miami Inter-Am.L.Rev. 429, 431 (1989).

Finally, the district court indicated in its order denying Malev's request that "[t]his Court's involvement would unnecessarily complicate the case and bring with it significant reciprocal discovery problems." We are not entirely sure what the district court meant when it invoked the phrase "reciprocal discovery problems." We think it is fair to infer, however, based on the parties' submissions to the district court and the hearing transcript that the district court worried about having to supervise discovery from Malev by Pratt & Whitney in the United States as well, if it granted Malev's request in order to ensure fairness to Pratt & Whitney.

■ Congress intended, however, that 28 U.S.C. § 1782 would provide an avenue for judicial assistance to foreign or international tribunals whether or not reciprocal arrangements existed. *See, e.g. John Deere*, 754 F.2d at 135; Amram, *The Proposed International Convention on the Service of Documents Abroad*, 51 A.B.A.J. 650, 651 (1965) ("[28 U.S.C. § 1782] is a one-way street. It grants wide assistance to others, but *demands* nothing in return. It was deliberately drawn this way....") (author was Chairman of the Advisory Committee to the United States Commission on International Rules of Judicial Procedure). Therefore, the district court was mistaken to the extent it believed that granting Malev's request would *necessarily* require the district court to supervise discovery sought by Pratt & Whitney from Malev and it should not have predicated its decision on this belief. The district court was free to grant Malev's request without assuming

---

**3.** The 1964 legislation which enacted the current version of § 1782 also repealed 22 U.S.C. §§ 270–270g which placed undesirable limitations on the parties who could seek assistance from United States courts in proceedings before international tribunals. *See* S.Rep. 1580, *reprinted in* 1964 U.S.C.C.A.N. at 3784–85.

responsibility for supervising Pratt & Whitney's discovery from Malev.[4]

Based on these considerations, we hold that the district court abused its discretion by relying on improper factors in denying Malev's application for discovery from Pratt & Whitney pursuant to 28 U.S.C. § 1782.

### III.

On remand, we wish to note that the district court can utilize its powers under the Federal Rules of Civil Procedure to lessen significantly the burden of handling this discovery. *See* 28 U.S.C. § 1782(a) (1988) ("The [discovery] order may prescribe the practice and procedure ... for taking the testimony or statement or producing the document or other thing."); *see also* S.Rep. No. 1580, *reprinted in* 1964 U.S.C.C.A.N. at 3788 ("[28 U.S.C. § 1782] leaves the issuance of an appropriate order to the discretion of the court, which, in proper cases ... may impose conditions it deems desirable.").

Specifically, the district court retains broad authority under Fed.R.Civ.P. 26(b)(1) to limit discovery where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; ... or (iii) the discovery is unduly burdensome or expensive....

Additionally, Rule 26(c) allows the court to order:

> (2) that the discovery may be had only on specified terms and conditions ... [and] (4) that certain matters not be inquired into, or that the scope of discovery be limited to certain matters.

Pursuant to these provisions, the district court could require Malev to prepare a discovery plan, make a showing that the discovery is "not obtainable from some other source that is more convenient, less burdensome, or less expensive," such as the Hungarian court, and then require Malev to take the discovery plan before the Hungarian court for a determination as to which requests are relevant before coming to the United States district court for actual discovery.

By so doing, the district court could achieve its objective of minimizing the burdens involved with supervising Malev's discovery from Pratt & Whitney while acting within the confines of 28 U.S.C. § 1782.[5]

### IV.

For these reasons, the order of the district court denying judicial assistance to Malev in seeking discovery from Pratt & Whitney under 28 U.S.C. § 1782 is reversed, and the case is remanded to the district court for proceedings consistent with the foregoing determination.

FEINBERG, Circuit Judge (dissenting):

The surest way to misconstrue a statute, one of our greatest federal judges said, is to apply it literally without regard to its purpose. See *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.1945), aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). That, I fear, is what the majority has done here, thereby creating a precedent that bodes ill for a federal judicial system that is struggling to stay afloat. This appears to be the only reported decision requiring a United States court generally to supervise imposition of United States procedures

---

**4.** The district court can, of course, accept Malev's offer to engage in "reciprocal discovery" which was first submitted to the district court in an affidavit in support of their petition for discovery and later reiterated in submissions to this court. Malev explained in these submissions that their offer of "reciprocal discovery" means making witnesses and documents available in the United States to the same extent Pratt & Whitney is required to do so.

**5.** In handling Malev's discovery request, the district court may also wish to consider the implications of a written decision of the Municipal

Court of Budapest, Hungary in the underlying litigation dated January 10, 1992. In light of the Hungarian court's decision, the district court may conclude that discovery should be stayed until an interlocutory appeal in the Hungarian courts is resolved or that discovery should proceed immediately. We make no determination on these matters. Our holding today simply establishes that the district court abused its discretion in refusing to entertain Malev's request for discovery pursuant to 28 U.S.C. § 1782.

with respect to evidence that is all subject to the jurisdiction of the foreign court. As appellee points out, if the majority opinion stands, United States courts can be required to become global "Special Masters for Discovery" to supervise proceedings in any court "in the world ... if either a litigant [in the foreign court] or its evidence can be found here." I submit that 28 U.S.C. § 1782, the statute relied on by the majority, does not require such an unwise result.

## I.  Background

The facts before us are simple. United Technologies International, Inc., Pratt & Whitney Commercial Engine Business (Pratt) manufactures airplane engines. In July 1991, it sued Malev Hungarian Airlines (Malev), seeking a declaratory judgment that Malev was bound by contract to purchase five of Pratt's jet aircraft engines. The lawsuit thus grows out of a garden-variety commercial dispute. Pratt sued Malev in the Municipal Court of Budapest, apparently under the assumption that it would be difficult for Malev, the Hungarian national airline, to disregard a judgment of the Hungarian court.

Four days after Malev filed its response to the complaint, without any prior request or notice to Pratt or to the court in Hungary, Malev filed a proceeding under 28 U.S.C. § 1782 [1] in the United States District Court for the District of Connecticut, seeking broad, United States-type discovery from Pratt. Malev requests discovery of, among other things, every document in Pratt's files concerning (a) any engine contract it has with the national airlines of Yugoslavia and Rumania; (b)

Pratt's efforts to sell engines to the airlines of Poland, Czechoslovakia and the Soviet Union; and (c) Pratt's development of its jet engine for all of Eastern Europe. Malev pressed these requests in the Connecticut district court even though Pratt is the plaintiff in the lawsuit in Hungary and is therefore subject to the full jurisdiction of that court. Malev included in its list of witnesses to be deposed the name of Robert F. Daniell, the chairman of Pratt's parent corporation, United Technologies Corporation. Malev claimed that because Mr. Daniell was linked by unnamed sources in a newspaper article to a criminal investigation of defense procurement practices by United Technologies and many other defense contractors in the United States, he should be deposed in connection with Pratt's suit against Malev in Hungary because he "may be able to provide information with respect to [Pratt's] practices in seeking to influence government employees...." That request has apparently been dropped on appeal. Pratt asserts that Malev's action here and its broad requests for discovery are part of a strategy of delay and trench warfare.

This was the background of the dispute as it came before Judge T. Emmet Clarie, former Chief Judge of the Connecticut District Court and an experienced jurist. The court had before it extensive submissions from both Malev and Pratt on the propriety of using section 1782 in this context, and heard argument for more than two hours. Judge Clarie's reaction to this extraordinary proceeding was as follows:

First, the judge was concerned with the breadth of Malev's requests and with the

---

1. 28 U.S.C. § 1782 provides, in relevant part: (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appoint-

ed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

necessary burden of supervising discovery. As a glimpse of what that burden might be in this fiercely-contested litigation, I note that after thorough briefing and argument in this court, the parties have continued to favor us with no fewer than 18 items of correspondence. The most notable of these includes a thick document translating a recent opinion of the Hungarian court, and there apparently has been a dispute as to the accuracy of the translation.

Second, the judge was concerned by the precedent he might set if he granted Malev's requests. Thus, he noted that

> the world is as small as the screen on your television set—as the world gets smaller, it means that every litigation in every country of the world involving an American manufacturer or party ... could simply come in and ask for almost unlimited disclosure and discovery ... under the supervision of the courts of this country which would bring with it a burden beyond present contemplation.

Third, the judge noted that Malev had never made a formal discovery request upon Pratt in the Hungarian court and that counsel for Pratt had represented to the district court that it would comply with any order the Hungarian court imposes. In the exercise of his discretion, the judge denied Malev's request. This appeal followed.

## II. Analysis

At the outset, it should be noted that Malev has not only involved a federal district court in routine discovery matters concerning a case in the Hungarian court but has also involved this court, thereby occasioning additional delay, expense and diversion. Malev has accomplished this even though ordinary litigants unsuccessfully seeking discovery in routine commercial cases in the district court could not achieve the same result. Such litigants, of course, would be bound by the final judgment rule, which does not countenance immediate appeals from the resolution of ordinary discovery disputes. *American Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 280–81 (2d Cir.1967). But since Malev's section 1782 discovery motion in effect constituted the whole of its

action in the district court, our precedents appear to allow Malev's appeal from the denial of the motion. See *In re Letters Rogatory Issued by the Director of Inspection*, 385 F.2d 1017, 1018 (2d Cir.1967).

Putting that consideration to one side, however, and going directly to the merits of the appeal, the issue before us is whether Judge Clarie abused his discretion in denying discovery. The statute uses the term "may," see note 1, supra, in describing the court's power to respond to a request for discovery, thus clearly lodging discretion in the district court. The cases confirm that abuse of discretion is the applicable standard. See *Lo Ka Chun v. Lo To*, 858 F.2d 1564, 1565–66 (11th Cir.1988); *In re Request for Assistance from Ministry of Legal Affairs*, 848 F.2d 1151, 1154 (11th Cir.1988), cert. denied, 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989). A party challenging a district judge's exercise of discretion "can prevail only if there was no reasonable basis for [its] decision." *S.E.C. v. Bausch & Lomb Inc.*, 565 F.2d 8, 18 (2d Cir.1977).

Under the applicable test, it simply cannot be said that Judge Clarie abused his discretion in denying Malev's request for discovery. Pratt brought an uncomplicated commercial lawsuit against Malev in the latter's country; Malev almost immediately brought this proceeding in this country seeking overly broad discovery; the indications were clear that this was all-out discovery warfare, which would require significant supervision by the district court; and Malev sought information here that, if appropriately sought, could have been obtained through the Hungarian court, but Malev never sought it there. In denying discovery, Judge Clarie not only did not abuse his discretion; he clearly reached the right result.

Why, then, does the majority refuse to affirm here and insist on sending this case back to Judge Clarie for "supervising" Malev's discovery from Pratt? The reasons given are that (1) the judge told Malev first to seek the requested discovery from the Hungarian court; and (2) the judge also said that he was denying the relief sought

"[a]bsent a request from the Hungarian court to become involved in the oversight of discovery." According to the majority, neither of these conditions appears in the statute and therefore neither could be a legitimate reason for denying discovery. Finally, the majority chides the district court for observing that "[t]his Court's involvement would unnecessarily complicate the case and bring with it significant reciprocal discovery problems." The majority concludes that the district court was "worried about having to supervise discovery from Malev by Pratt ... in the United States as well, if it granted Malev's request in order to ensure fairness to Pratt...." According to the majority, this concern was inappropriate because the district court "was free to grant Malev's request without assuming responsibility for supervising [Pratt's] ... discovery from Malev."

None of these reasons, singly or together, justify reversal of the district court here. With regard to the first, which the majority itself characterizes as "a quasi-exhaustion requirement," the majority suggests that the district court impose the same condition upon remand. Specifically, the majority states that under Fed.R.Civ.P. 26, the district court could require Malev to show that the discovery is " 'not obtainable from some other source ...' such as the Hungarian court." If the district judge can impose such a sensible requirement later, why bar it at the outset? "Quasi-exhaustion" may not be written into the statute, but why not require it? The doctrine of exhaustion of remedies is not unknown to judges, cf. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938), and section 1782 seems to be an appropriate instance for utilizing it. Moreover, there is no indication, either in the text or the legislative history of section 1782, that Congress intended the statute to be used for anything other than to provide information necessary to foreign litigation but beyond the power of the foreign court. The district court here did not mechanically require exhaustion. Its decision in this respect turns on Malev's failure to show any need for invoking section 1782.

As for the second reason given by Judge Clarie, I agree with the majority that the statute allows an application to be made by "any interested person," not just by the foreign tribunal. But Judge Clarie did not deny Malev relief because he misapprehended this principle. He denied discovery because there was no showing of need and he was concerned over the burden of involving a Connecticut district court in granting routine discovery for a foreign litigation. His reference to a request from the Hungarian court was clearly meant only to signal that he might reconsider the need for such discovery if asked to by a foreign court.

Finally, the majority's disapproval of the judge's reference to reciprocal discovery is hard to understand. Of course, the statute does not *require* reciprocal discovery and Judge Clarie did not believe that it did. But, in the district court, Malev offered "to engage in reciprocal discovery," obviously to put itself in a more palatable light. Can it seriously be urged, in the face of such an offer, that a United States litigant in a foreign proceeding should be subjected to United States-style discovery but at the same time obtain only the discovery that the foreign system grants? Fairness, in view of Malev's offer, suggests otherwise. Judge Clarie was absolutely right to be concerned about supervising such discovery and the complications that might ensue. On top of these burdens, the district court will now have to determine the viability of Malev's discovery request in light of the Hungarian court's decision referred to in the majority opinion at note 5.

In sum, Malev seeks to use section 1782 to engage in broad United States-style discovery against its opponent in a foreign litigation, where the party and all the information sought are—by Malev's own concession at oral argument—subject to the process of the foreign court. Malev cites no reported case—and I have found none—in which section 1782 has been used in such circumstances. The section is generally used to seek limited amounts of evidence (commonly bank records) from third parties in this country not subject to the jurisdiction of the foreign court. See, e.g., *In re Request for Assistance from Ministry of*

*Legal Affairs,* 117 F.R.D. 177, 178 (S.D.Fla. 1987), aff'd, 848 F.2d 1151 (11th Cir.1988), cert. denied, 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989); *In re Letter of Request for Judicial Assistance,* 669 F.Supp. 403, 408 (S.D.Fla.1987). It is true that in the leading case relied on by Malev—*John Deere, Ltd. v. Sperry Corp.,* 754 F.2d 132, 138 (3d Cir.1985)—the Third Circuit reversed a district court's denial of discovery pursuant to § 1782 requested by Deere, which was then being sued by Sperry in Canada. But the district court there had relied on impermissible reasons—lack of a reciprocal foreign statute and the inadmissibility at trial of the evidence sought—in denying discovery. Id. Moreover, the main focus of the circuit court's opinion was on Deere's right under § 1782 to obtain the deposition of a Sperry employee after Deere had unsuccessfuly requested the same relief from the Canadian court. *John Deere,* 754 F.2d at 137.

Malev's position, in effect, is that section 1782 can be used as a matter of right against party litigants to supplant foreign procedures with discovery under United States rules, supervised by heavily burdened United States courts, any time a litigant is subject to the jurisdiction of this country's courts. I do not believe that this is the law. Accordingly, I respectfully dissent.