**In re Application of SARRIO S.A. FOR ASSISTANCE BEFORE FOREIGN TRIBUNALS.**

Civil Action No. 94–MC–235.

United States District Court,
S.D. Texas,
Houston Division.

July 28, 1995.

Graham Kerin Blair, Verner Liipfert Bernhard Mcpherson and Hand, Houston, TX, for Sarrio S.A.

Ralph Edward Ishmael, Baker & McKenzie, Dallas, TX, for Kuwait Inv. Authority.

## ORDER

RAINEY, District Judge.

Pending before the Court is the Second Application for Order to Take Discovery Pursuant to 28 U.S.C. § 1782 ("§ 1782") (Docket Entry # 5) filed by Sarrio S.A. ("Sarrio"). After considering this application, Hines Group's Opposition to Sarrio's Second Application for Order to Take Discovery Pursuant to § 1782 (Dkt.# 6), Kuwait Investment Authority's ("KIA") Objections to Sarrio's Second Application for Order to Take Discovery (Dkt.# 7), Hines Group's Supplemental Opposition to Sarrio's Second Application for Order to Take Discovery Pursuant to § 1782 (Dkt.# 8), Response of Sarrio to Hines Group's and KIA's Oppositeness to Sarrio's Second Application for Order to Take Discovery (Dkt.# 9), Hines Group's Reply to Sarrio's Response to Opposition to Sarrio's Second Application for Order to Take Discovery Pursuant to § 1782 (Dkt.# 11), Sur–Reply of Sarrio (Dkt.# 13), the complete record, and the applicable law, the Court finds that Sarrio's application should be GRANTED.

## I. BACKGROUND

In February 1993, Sarrio, a Spanish corporation, commenced civil litigation in Spain against KIA,[1] the Kuwait Investment Office ("KIO"),[2] and several Spanish subsidiaries of KIA: Grupo Torras S.A. ("Grupo Torras"),[3] Torraspapel S.A. ("Torraspapel"), and Sarriopapel y Cellulosa ("Sarriopapel").[4] The dispute arose from a 1991 contract (the "1991 Contract") for the purchase by Grupo Torras and Torraspapel of certain Sarrio assets. In the Spanish litigation, Sarrio seeks to apply the Spanish version of the legal doctrine of

---

1. KIA is the State Investment Agency of the Emirate of Kuwait. It has a legal personality. It was established by a Kuwaiti statute in 1982 to manage and invest a portion of Kuwait's oil revenues.

2. KIO is a branch office of KIA. It manages the worldwide investments of KIA from its location in London, England. KIO has no separate legal existence from KIA. All of KIA's objections to Sarrio's Second Application to Take Discovery Pursuant to § 1782 are raised on behalf of itself, and its office the KIO.

3. Grupo Torras is a Spanish holding company wholly owned by KIA/KIO.

4. Torraspapel and Sarriopapel are companies directed by KIO through Grupo Torras.

"piercing the corporate veil" in order to collect damages from KIA and KIO for Grupo Torras's alleged breach of its obligations to Sarrio.

In February 1994, Sarrio also commenced civil litigation against KIA/KIO in England. This matter also arose from the 1991 Contract. In the English action, Sarrio is seeking damages for alleged misrepresentations made to Sarrio by KIA/KIO in the course of negotiations leading up to the 1991 Contract.

This Court became involved in the above proceedings on June 13, 1994 when Sarrio applied for an Order to Take Discovery Pursuant to § 1782.[5] This Court granted the application on June 15, 1994. In accordance with the order, Sarrio issued subpoenas commanding Gerald D. Hines ("Hines")[6] to produce documents and give testimony in the Southern District of Texas in support of the pending proceedings in England and Spain. Although Hines is not a party in the foreign proceedings, Sarrio contended that due to his previous position as a shareholder in Prima Inmobiliaria S.A. ("Prima"),[7] Hines had information relevant to (1) the KIA–KIO/Grupo Torras family of companies that would further Sarrio's attempts to "lift the corporate veil" in the Spanish proceedings and (2) the alleged misrepresentations made to Sarrio regarding Hines' status as a committed, long term investor in Prima for use in the English proceedings.[8]

Hines complied with the subpoenas without objection. In addition to testifying for approximately three hours at a deposition on October 26, 1994, Hines also presented several hundred pages of documents to Sarrio on both October 7, 1994 and January 16, 1995. The documentation indicated that two employees of Gerald D. Hines Interests, Howard H. Callaway, Jr. ("Callaway")[9] and Louis S. Sklar ("Sklar"), conducted, or were otherwise involved in, the negotiations on the terms of Hines' 1990 investment in Prima.

Sarrio now applies to this Court a second time for permission under section 1782 to conduct discovery in the Southern District of Texas for use in the English and Spanish proceedings. Specifically, Sarrio claims that the documents that Hines has produced indicate that Callaway and Sklar will likely be able to provide many of the specific facts surrounding Hines' investment in Prima that Hines did not have knowledge of, or was unable to recall, during his deposition. Therefore, Sarrio wishes to issue subpoenas compelling Callaway and Sklar to attend depositions and produce documents in the hopes that these persons can supply information that will shed additional light on Hines' 1990 investment in Prima.

Sklar, Callaway, Hines, and Hines Interests Limited Partnership ("HILP") (collectively the "Hines Group") oppose Sarrio's second application to take discovery pursuant to section 1782. The Hines Group objects to

---

5. 28 U.S.C. § 1782(a) (1988) provides:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing pro-

duced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any applicable legal privilege.

6. Hines, a United States citizen, is an experienced and prominent property developer.

7. Prima was a Spanish real estate company which was partially owned by Grupo Torras. Prima stock formed part of the purchase price paid to Sarrio under the 1991 Contract.

8. In the English litigation, Sarrio claims that its acceptance of Prima stock in lieu of cash was made in substantial reliance on KIO's misrepresentations about Hines' status as a Prima stockholder.

9. Callaway is no longer an employee of Gerald D. Hines Interests.

Sarrio's application on four different grounds: (1) that it impermissibly conflicts with pre-trial discovery rules in English and Spanish courts, (2) that it would offend the English and Spanish courts, (3) that it seeks to circumvent, in contravention of federal case law, the discovery stay entered by the Spanish court, and (4) that it seeks discovery that imposes unreasonable expense and is unduly burdensome on HILP and its present and former employees.[10]

## II. ANALYSIS

### A. DISCOVERABILITY REQUIREMENT

Hines Group argues that a district court must first inquire into whether the evidence sought under section 1782 would be properly obtainable in the foreign jurisdiction before the court may grant an applicant's discovery request pursuant to that statute. Hines Group further contends that the discovery sought in the instant case would not be permitted under either Spanish or English law.

### 1. Introduction

■ Under section 1782, a district court has broad discretion to grant a foreign litigant's request to conduct discovery in the United States for use in foreign proceedings. S.Rep. No. 1580, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3788 (hereinafter "Senate Report"); *see, e.g., Lo Ka Chun v. Lo To*, 858 F.2d 1564, 1565 (11th Cir.1988). The Circuits are in clear disagreement, however, about what a proper exercise of that discretion entails. The discord centers on whether evidence sought in the United States must be discoverable under the laws of the foreign jurisdiction before a court may grant a foreign litigant's discov-

ery application. An examination of the purposes behind section 1782, its language, and the most recent case law addressing this issue leads this Court to conclude that evidence need not be discoverable in a foreign jurisdiction before a court can grant a discovery request pursuant to section 1782.

■ The history of section 1782 indicates that Congress intended federal courts to provide broad assistance to foreign litigants who request permission to conduct discovery in the United States. *See, e.g., In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1152–54 (11th Cir.1988) (discussing the evolvement of section 1782); *see also* Walter B. Stahr, *Discovery Under 28 U.S.C. § 1782 for Foreign and International Proceedings*, 30 Va. J. Int'l L. WL at *4 (1990) (explaining that the ratifiers of the 1964 amendments to section 1782 "hoped to make United States discovery assistance for foreign cases simple, generous and fair"). Whereas early versions of section 1782 provided only limited assistance to foreign tribunals pursuant exclusively to letters rogatory,[11] the statute was amended in 1964 to effectuate two purposes. First, Congress intended to "*clarif[y]* and *liberalize* ... existing U.S. procedures for assisting foreign and international tribunals and *litigants* in obtaining oral and documentary evidence in the United States ..." Senate Report at 3788 (emphasis added). Second, by expanding the opportunities for foreign litigants and courts to access potentially probative evidence in the United States, the amendments were meant to "encourag[e] foreign countries by example to provide similar means of assistance to our courts." *In re Application of Silvia Gianoli*, 3 F.3d 54, 58 (2d Cir.1993),

---

10. In order to avoid the need to re-apply to this Court each time that Sarrio desired to conduct further discovery in this District pursuant to § 1782, Sarrio had also originally asked for authorization "to take discovery of other persons who reside or can be found within this District as may be able to provide testimony or documents relevant to Sarrio's U.K. and Spanish litigations." (Dkt. # 5 at 3). Sarrio has voluntarily withdrawn this request. (Dkt. # 9 at 6). Hence, the Hines Group's, as well as KIA's, objections to this request are now moot (this issue was KIA's sole objection to Sarrio's application).

11. "Letters rogatory are the medium ... whereby one country, speaking through one of its courts, requests another country, acting through its own courts ... to assist the administration of justice in the former country...." *In re Letter Rogatory from the Justice Court, District of Montreal, Canada*, 523 F.2d 562, 563 n. 1 (6th Cir. 1975) (quoting *The Signe*, 37 F.Supp. 819, 820 (E.D.La.1941)).

*cert. denied,* 510 U.S. 965, 114 S.Ct. 443, 126 L.Ed.2d 376 (1993). Courts disagree, however, on whether these purposes necessitate the reading of a discoverability requirement into section 1782.

### 2. Analysis

Courts are divided as to whether section 1782 contains an implicit requirement that the requested discovery be properly obtainable in the foreign proceeding.

The First and Eleventh Circuits have expressly found that discovery under section 1782 is not available unless the evidence sought would be discoverable under the laws of the foreign tribunal. *See In re Application of Asta Medica, S.A.,* 981 F.2d 1, 7 (1st Cir.1992) (holding that litigant requesting assistance under section 1782 must make threshold showing that information sought in United States would be discoverable in foreign jurisdiction); *Trinidad,* 848 F.2d at 1156 ("district court [in a 1782 case] must decide whether the evidence would be discoverable in the foreign country before granting assistance"); *Lo Ka Chun,* 858 F.2d at 1566 (remanding case for a determination as to whether evidence sought by foreign litigant in United States is discoverable in foreign jurisdiction). In *Asta,* the First Circuit gave two reasons for implying a discoverability requirement. First, the court noted that a failure to imply such a requirement might place a United States party at a substantial disadvantage when involved in foreign litigation against a foreign party—a result that Congress could not have intended when amending section 1782. *Asta,* 981 F.2d at 5. For example, when the litigation is pending in a country with limited pre-trial discovery, a discovery order pursuant to section 1782 might give the foreign party access to unlimited discovery in the United States while the American party would be restricted in its ability to obtain information in the foreign jurisdiction.[12] *Id.*

Second, the First Circuit was concerned that foreign tribunals would be offended if "foreign litigants [were permitted to] use section 1782 to circumvent foreign law and procedures." *Id.* at 6. The court reasoned that by interpreting section 1782 in a way that would permit such circumvention (i.e., not finding a discoverability requirement), "the broader goal of the statute—stimulating cooperation in international and foreign litigation—would be defeated since foreign jurisdictions would be reluctant to enact policies similar to section 1782." *Id.* at 7.

The Second Circuit, on the other hand, has consistently rejected the requirement that a district court make a discoverability inquiry. *See Gianoli,* 3 F.3d at 57 (holding that section 1782 does not require the district court to make a finding of discoverability under the laws of the foreign jurisdiction); *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1098 (2d Cir.1995) (reaffirming that "the discoverability of requested material under foreign law is simply one factor that a district judge may consider in the exercise [of] his or her discretion"); *see also Malev Hungarian Airlines v. United Technologies International, Inc.,* 964 F.2d 97 (2nd Cir.1992), *cert. denied,* 506 U.S. 861, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992) (holding that a foreign litigant need not seek discovery from foreign court before proceeding under section 1782). As explained below, the Second Circuit has reasoned that the plain language and history of section 1782 dictate a finding that a district court should not impose an absolute discoverability requirement under the statute.

In *Malev,* the Second Circuit characterized the purposes behind newly amended section 1782 as "the twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." 964 F.2d at 100. After noting that section 1782 contains only three express requirements,[13] none of which include a discov-

---

12. Although Hines Group raises this policy concern (Dkt. # 8 at 3–4), it is not applicable in the present case because none of the parties to the foreign proceedings are U.S. persons.

13. The plain language of section 1782 sets forth just three requirements: (1) the person from whom discovery is sought must reside or be found in the district of the district court to which the application is made, (2) the discovery must be "for use in a proceeding in a foreign or

erability requirement, the court concluded that these "twin aims" would be undermined by a reading of extra-statutory barriers to obtaining discovery into the statute. *Id.*

The Second Circuit clarified its position on the requirements of section 1782 in *Gianoli.* The court began its analysis of the discoverability issue with an examination of section 1782's language. 3 F.3d at 58. Having found that the text of section 1782 contains no requirement of discoverability under the laws of the foreign jurisdiction, the court then reasoned that this silence, in conjunction with the liberalizing nature of the 1964 amendments to section 1782 and the wide discretion that Congress has given district courts to grant discovery requests under the statute,[14] indicates that Congress did not intend for section 1782 to have an implicit requirement that any evidence sought in the United States be discoverable under the laws of the foreign country. *Id.* at 59. Thus, the court reaffirmed the position taken in *Malev* that extra-statutory barriers to discovery should not be read into the statute. *Id.* (citing *Malev*, 964 F.2d at 100).

After holding that section 1782 contains no discoverability requirement, the court then acknowledged the legitimacy of the policy concerns that prompted the First and Eleventh Circuits to find such a requirement. *Id.* at 60. The court found, however, that Congress intended these concerns to be addressed by a district judge in the exercise of his or her discretion under section 1782. *Id.* The court concluded that the district court's exercise of discretion must be properly guid-

ed by the purposes of section 1782.[15] *Id.* at 61.

In the most recent case to confront the discoverability issue, the Second Circuit further refined its analysis under section 1782 by providing instructions on how a district judge should exercise his or her discretion in accordance with the ruling in *Gianoli.* *Euromepa,* 51 F.3d at 1097–98 (2d Cir.1995). Specifically, the court addressed the "appropriate scope of . . . inquiry into the likelihood that providing section 1782 discovery assistance to foreign litigants will offend a foreign tribunal." *Id.* at 1099.

The Second Circuit began its opinion by reiterating its prior holding that section 1782 does not contain an implicit discoverability requirement. Next, the court held that "an extensive examination of foreign law regarding the existence and extent of discovery in the forum country is [not] desirable in order to ascertain the attitudes of forum nations to outside discovery assistance." *Id.* at 1099. The court reasoned that an in-depth inquiry into foreign discovery rules would be a "costly, time-consuming, and inherently unreliable method of deciding section 1782 requests [that could not] possibly promote the 'twin aims' of the statute."[16] *Id.* at 1099–1100.

After rejecting the desirability of a detailed foray into foreign discovery rules, the court went on to formulate the manner in which a district court should approach the problem of determining whether a foreign court would be offended by the granting of a foreign litigant's request to conduct discovery in the United States. *Id.* at 1100. The court held that a district court, in the exer-

---

international tribunal," and (3) the application must be made "by a foreign or international tribunal" or by "any interested person." In the instant case, all of these requirements are met. Callaway and Sklar reside in the Southern District of Texas, Sarrio requests discovery for use in litigation pending in England and in Spain, and Sarrio is an "interested person" within the meaning of the statute.

**14.** *See* Senate Report at 3788 ("[section 1782] leaves the issuance of an appropriate order to the discretion of the court").

**15.** In *Gianoli*, the Second Circuit found that the district court properly exercised its discretion in this regard:

Although the district court did not make a finding as to the parties' ability to obtain pretrial discovery under Chilean law, it clearly made an *inquiry* into whether its grant of discovery under section 1782 would circumvent Chilean restrictions on discovery and whether its grant of discovery would be an affront to the Chilean court or Chilean sovereignty.

3 F.3d at 61 (emphasis in original).

**16.** The court also opined that "it is unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law." *Id.*

cise of its discretion, "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* According to the court, the only type of proof that would be authoritative is evidence "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Id.* The court concluded that absent such clear evidence of a foreign forum's objection to discovery assistance, "a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'" *Id.* (quoting Senate Report at 3783).

In the absence of any Fifth Circuit authority on point,[17] this court finds the Second Circuit's reasoning in *Malev, Gianoli,* and *Euromepa* to be persuasive. These cases, the most recent to address the section 1782 discoverability issue, represent a well-reasoned trend towards rejecting the requirement that a district court first inquire into foreign discovery rules before granting a discovery application under section 1782.

A multitude of reasons compel this Court to adopt the Second Circuit's reasoning as instructive in rejecting the Hines Group's argument. First, the Second Circuit's decision to reject an implicit discoverability requirement enjoys wide-spread support from the critical commentaries.[18]

Second, the drafters of section 1782, who were aware that United States discovery rules are generally broader than those of foreign civil law systems, did not include the need to conduct a discoverability inquiry as one of the statute's express requirements. Rather, it appears that this type of inquiry was intended to be left to the broad discretion of the district courts. *See Gianoli,* 3 F.3d at 59–60; Smit, *supra,* at 235; Stahr, *supra,* at *7.

Third, rejecting a discoverability requirement furthers the purposes of section 1782 by generously allowing foreign litigants to obtain potentially probative evidence in the United States in furtherance of resolving foreign legal disputes. Assistance by United States district courts in this endeavor would presumably be welcomed by foreign courts, and, at the same time, this show of cooperation may inspire those courts to adopt similar procedures for use by American citizens. *See* Smit, *supra,* at 235 ("[The drafters of section 1782] realized that ... foreign procedural systems would generally quite readily accept and welcome the assistance the American courts might grant in providing them with relevant information.")

Finally, it is evident that American courts often struggle with proper interpretation of their own discovery rules let alone those of foreign countries. Thus, in order to provide efficient assistance to foreign litigants while avoiding burdening district courts with weighty issues of foreign law, it is best to leave the interpretation of foreign discovery

17. The Court does not share the Hines Group's opinion that the Fifth Circuit has approved a discoverability requirement when private litigants seek discovery under section 1782. In a case rejecting such a requirement where a discovery request issues from a foreign court, the Fifth Circuit observed in *dicta* that some Circuits have undertaken such an inquiry when the request for information comes from a private litigant as opposed to from a foreign court, and that the reason they have done so is "to avoid assisting a foreign litigant who desires to circumvent the forum nation's discovery rules by diverting a discovery request to an American court." *In re Letter Rogatory, Caracas, Venezuela,* 42 F.3d 308, 310 (5th Cir.1995). The Court is of the opinion that the Second Circuit's approach takes into account the concern that a private litigant will use section 1782 to circumvent foreign discovery rules, as this issue may be addressed by the judge when exercising his or her discretion as to whether to grant an applicant's discovery request.

18. *See* Hans Smit, *Recent Developments in International Litigation,* 35 S. Tex. L.J. 215, 234–235 (1994) ("Section 1782 cannot, by any acceptable method of interpretation, be construed to impose the requirement that the evidence to be obtained through section 1782 be discoverable ... under foreign law ... [T]here can be no doubt that the drafters of section 1782 specifically intended no [discoverability] requirement to apply.") (author was a chief architect of current version of section 1782); Stahr, *supra,* at *7 ("[N]othing on section 1782 or its legislative history intimates that discovery for use in a foreign court is only available if the same discovery could be had in the foreign state.")

rules to the foreign tribunals that promulgate them. Indeed, as the *Euromepa* court found:

> [T]he drafters [of section 1782] realized that making the extension of American assistance dependant on foreign law would open a veritable Pandora's box. They definitely did not want to have a request for cooperation turn into an unduly expensive and time-consuming fight about foreign law.... They also realized that, although civil law countries do not have discovery rules similar to those of common law countries, they often do have quite different procedures for discovering information that could not properly be evaluated without a rather broad understanding of the subtleties of the applicable foreign system. It would, they judged, be wholly inappropriate for an American district court to try to obtain this understanding for the purpose of honoring a simple request for assistance.

*Euromepa,* at 1099 (quoting Smit, *supra,* at 23).

For the foregoing reasons, it is irrelevant that pre-trial discovery is *generally* not available to litigants in English and Spanish civil proceedings. It is not necessary for evidence to be discoverable under the laws of a foreign tribunal before a district court can grant a foreign litigant's section 1782 request to conduct discovery in the United States.

### B. OFFENSE TO FOREIGN TRIBUNALS

■ The Court must next address the argument that the English or Spanish tribunals would be offended if this Court granted Sarrio's section 1782 request. To ensure that district courts will not become unnecessarily immersed in issues of foreign law, it is only necessary to determine whether there is "authoritative proof"[19] that the English or Spanish courts would be offended. *See Euromepa,* at 1100.

#### 1. The English Proceeding

■ Hines Group has presented no authoritative proof that granting Sarrio's application would offend the English tribunal involved in the underlying litigation. In fact, *South Carolina Insurance Co. v. Assurantie Maatschappij De Zevem Provinvci en NV,* [1987] AC 24, a decision of England's highest judicial body, expressly approved a private litigant's use of section 1782 to gather evidence in the United States for use in English proceedings. Lord Brandon stated:

> I cannot see that the [defendants], by seeking to exercise a right potentially available to them under the federal law of the United States, have in any way departed from, or interfered with, the procedure of the English court. All they have done is what any party preparing his case in the High Court is entitled to do, namely to try to obtain in a foreign country, by means lawful in that country ... evidence which they believe they need in order to prepare and present their case.

[1987] AC 24, 41–42. Thus, this Court is satisfied that the House of Lords, the court in which Sarrio's case is pending, will not be offended by a decision to grant Sarrio's section 1782 discovery request.

#### 2. The Spanish Proceeding

■ Both parties agree that no Spanish cases directly address a foreign litigant's use of section 1782. However, Hines Group argues that the Spanish tribunal involved in the underlying litigation would be offended if Sarrio's request were granted because: (1) Sarrio has not complied with certain Spanish procedural prerequisites to conducting foreign discovery and (2) Sarrio has not adequately considered the Hines Group's fundamental rights under Spanish law. Sarrio responds that the first argument is irrelevant and that the second mischaracterizes Spanish law.

The dispute over whether the Spanish tribunal would be offended has become a "battle of the experts." Both Hines Group and Sarrio have submitted affidavits from Spanish attorneys in support of their respective positions. Rather than attempt to decide the

---

**19.** Authoritative proof includes a foreign country's judicial, executive, or legislative declarations that specifically address the use of evidence gathered under foreign procedures. *Euromepa* at 1100.

correct interpretation and application of Spanish law, this Court believes that the appropriate decision in this case is to leave this issue for consideration by the Spanish tribunal. The Spanish court can "always enjoin [Sarrio] from pursuing discovery in a manner that violates the judicial policies of [Spain], or can simply refuse to consider any evidence that [Sarrio] gathers by what might be—under [Spanish] procedures—an unacceptable practice." *Euromepa,* at 1101. Thus, Spain "can quite easily protect itself from the effects of any discovery order by [this Court] that inadvertently offend[s Spanish] practice" by refusing to admit evidence obtained pursuant to these subpoenas. *Id.*

## C. CIRCUMVENTION OF DISCOVERY STAY

Hines Group also argues that granting Sarrio's application would circumvent a discovery stay entered by the Spanish court. This stay has been lifted (Dkt. # 11, Attachment B). Therefore, Hines Group's argument is now moot.

## D. SECTION 1782 AND THE FEDERAL RULES OF CIVIL PROCEDURE

■ Last, Hines Group contends that Sarrio's discovery request is unduly burdensome, in violation of the Federal Rules of Civil Procedure.

■ A district court retains broad authority under section 1782 to limit discovery in accordance with the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1782 (1988) ("To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure"). The court may deny a petitioner's section 1782 request if allowing the discovery to proceed would be in violation of federal discovery rules. *Euromepa,* at 1101 n. 6. In particular, FRCP 26(b)(2) and 45(c)(3)(A)(iv) empower a district court to limit discovery that is unduly burdensome, unreasonably cumulative, or unreasonably expensive. In applying these rules, however, it must be remembered that they are meant to be broadly and liberally construed in favor

of permitting discovery to take place. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Sarrio's request is neither unduly burdensome nor unreasonably duplicative. It is true that Mr. Hines has provided *some* information relevant to the facts that Sarrio seeks to establish for use in the foreign proceedings. It is also true, however, that Mr. Hines was unable to recall, or did not have knowledge of, information that Sklar and Callaway may possess. *See* Dkt. # 9, Exhibits 4 and 5. Based on the record, it is reasonable to believe that Sklar and Callaway will be able to provide Sarrio with further information that is relevant to the Spanish and English actions.

The Court is concerned about the cost of discovery to the Hines Group. While "the mere fact that compliance with a discovery request will cause significant expense does not of itself justify denial of the request," *Biben v. Card,* 119 F.R.D. 421 (W.D.Mo.1987) (citing *Delozier v. First National Bank of Gatlinburg,* 109 F.R.D. 161 (E.D.Tenn.1986)), the fact that the Hines Group is not a party to this action weighs heavily in favor of restricting Sarrio's access to discovery. However, in its pleadings, the Hines Group states merely that further discovery would be "costly" without providing the Court with specific facts as to what these costs would entail. The Court is therefore of the opinion that Sarrio should be allowed to conduct the requested discovery, but that it should bear all expenses of any further discovery.

## E. KIA'S REQUEST FOR NOTIFICATION

■ KIA has reasonably requested that this Court order Sarrio to provide proper notification pursuant to the Federal Rules of Civil Procedure on any future discovery requests to all of the defendants to the Spanish litigation (Dkt. # 7 at 5). KIA argues that this notice is necessary to ensure that all parties to the foreign litigation will have the opportunity to either object to any future discovery requests or to attend any future depositions and document production.

Sarrio and KIA have agreed upon what proper notification to KIA shall consist of in the future. The Court is therefore of the opinion that Sarrio shall forward a copy of the Application or request (1) by first class mail to KIA's counsel in Dallas and (2) by facsimile transmission to KIA's counsel in London.[20] Proper notification to the remaining parties in the Spanish litigation, Grupo Torras, Torraspapel, and Sarriopapel, will also be satisfied by a facsimile transmission by Sarrio of any new submissions to these parties' respective counsels.

It is therefore ORDERED that Sarrio's application (Dkt.# 5) is hereby GRANTED, and it is

FURTHER ORDERED that Sarrio is authorized pursuant to 28 U.S.C. § 1782 to undertake discovery relevant to the issues identified in its application from Howard H. Callaway, Jr., and Louis S. Sklar, including (1) issuing subpoenas to both and (2) issuing subpoenas for the production of documents; and it is

FURTHER ORDERED that Callaway and Sklar are directed to comply with such subpoenas in accordance with the Federal Rules of Civil Procedure and the Rules of this Court; and it is

FURTHER ORDERED that Graham Kerin Blair and David A. Brakebill, counsel to Sarrio, may issue, sign and serve such subpoenas on Respondents pursuant to Fed. R.Civ.P. 45(a)(3) in this matter; and it is

FURTHER ORDERED that Sarrio shall ensure that copies of this order and any subpoenas issued pursuant to this order are delivered to the parties to the foreign proceedings identified in its application.

The Clerk shall enter this Order and provide a true copy to all parties.

---

**20.** Because KIA and KIO have no separate legal existence, Sarrio's notification to KIA will also constitute notification to KIO.